**TRI–BORO BAGEL CO., Inc., Plaintiff,**
v.
**BAKERY DRIVERS UNION LOCAL 802,**
an unincorporated association, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and John Strauss, as President thereof, Defendants.

No. 63–C–898.

United States District Court
E. D. New York.

Aug. 15, 1963.

Gaynor, Mosher, Freeman, Glick & Pisani, New Rochelle, N. Y., for plaintiff; Mitchell R. Glick, New Rochelle, N. Y., of counsel.

Cohen & Weiss, New York City, for defendants; Bruce H. Simon, New York City, of counsel.

ROSLING, District Judge.

Motion by plaintiff Tri-Boro Bagel Co. Inc. (Tri-Boro) for an order remanding to the Supreme Court of the State of New York, Queens County, the action originally brought in said court by Tri-Boro against defendant Bakery Drivers Union Local 802, etc. ("Local") and co-defendant John Strauss as its president, and thereafter removed from said court, is denied.

The allegations of the complaint and other papers before this court subsume the issue to be litigated in the category of violations of contracts between "an employer and a labor organization representing employees in an industry affecting commerce as defined"[1] in applicable provisions of law.[2] A suit grounded upon a claim charging such violation "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."[1]

■■■ The contract between the parties contains a provision committing them to arbitrate their subsisting dispute and barring a strike pending arbitration. It is charged by plaintiff that defendant in disregard of its commitment has struck. The sole relief sought by plaintiff in the action it has instituted is for an injunction restraining the Union from continuing such strike.[3]

Restriction of plaintiff's demand to an injunction and choice of a court of a state in which all parties were citizens as the

1. Labor Management Relations Act (LMRA), 1947, § 301(a), excerpt quoted from 29 U.S.C. § 185(a), "Suits by and against labor organizations—Venue, amount and citizenship."

2. Definition of expression "industry affecting commerce" is given in 29 U.S.C. § 152(6), Labor Management Relations Act, 1947, § 101.

3. Plaintiff asks additionally for "such other and further relief as to the court may seem just and proper * * *." Such demand is cumulative of rule 54(c) of the Rules of Civil Procedure which enjoins that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief

in his pleadings." If plaintiff on trial is able to prove what it now pleads, the court upon the unamended complaint would be authorized to award money damages, nominal in amount, if the extent thereof was unproved or compensatory if a basis were established. Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); cf. Riggs, Ferris & Geer v. Lillibridge, 316 F.2d 60 (2d Cir. 1963). Proof relevant to plaintiff's prayer for injunctive relief should similarly suffice for a decree of specific performance directing the defendant union to proceed with its arbitration. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957).

The foregoing observations are relegated to a footnote to make clear the court's

722

forum were deliberate. In an action by an employer against a union brought in a federal court under authority of LMRA § 301(a) to restrain violation, in face of an arbitration provision, of a no-strike agreement, Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 212, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962) had ruled that Norris-LaGuardia[4] barred issuance of an injunction. Justice Black writing for the majority of the court noted trenchantly (id. 370 U.S. p. 214, 82 S.Ct. p. 1339, 8 L.Ed.2d 440) that congress did not intend to confer upon an employer a personal right of suit for breach of a labor contract "at the cost of putting the federal courts back into the business of enjoining strikes and other related peaceful union activities." Plaintiff, seeking to avoid the effect of Sinclair, turned to the state court hopeful that its tribunal would issue the injunction the federal courts refused. The New York Statute [5] is in pari materia with that enacted by Congress and construed in Sinclair.[6]

■ That a § 301(a) suit may be brought in either a state or federal court is now settled.[7] Equally certain is it that

view that its denial of the application to remand is grounded not on these considerations, but rather on the broader principle enunciated in the text that what is justice under law federally determined may not be varied by state courts of concurrent jurisdiction.

4. 47 Stat. 70, 29 U.S.C. § 104. "No Court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute" etc. from striking or engaging in strike activities.

5. The local statutes are no less stern than the Federal in their denunciation of what labor cites as ancient wrongs. The Civil Practice Act in § 876-a provides, in phrasing which for the most part copies that found in the cited provisions of Norris-LaGuardia and in no substantial respect is disparate in intent and effect, that:
   "No court nor any judge or judges thereof shall have jurisdiction to issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, as hereinafter defined, except after a hearing, and except after findings of all the following facts by the court or judge or judges thereof to be filed in the record of the case:
   *   *   *   *   *   *
   "(f) That no item of relief granted prohibits directly or indirectly any person or persons from doing, whether singly or in concert, any of the following acts:"
   Here follows in 10 numbered subdivision a catalog of what the state courts may not enjoin, congruent in language with the ten lettered prohibitions in 29 U.S.C. § 104, for convenience in summation referred to as "strike and strike activities." Subdivision 11 of the Practice Act section which includes in the enumeration of activities which may not be enjoined "[d]oing in concert of any or all of the acts heretofore specified on the ground that the persons engaged therein constitute an unlawful combination or conspiracy or *on any other grounds whatsoever*" [emphasis supplied] finds its less emphatic Norris-LaGuardia counterpart not in a lettered subdivision but in the inhibitory preamble of the Act.

6. Sinclair Refining Co. v. Atkinson, supra, 370 U.S. at p. 212, 82 S.Ct. at p. 1338, 8 L.Ed.2d 440, "An injunction against work stoppages, peaceful picketing or the nonfraudulent encouraging of those activities would, however, prohibit the precise kinds of conduct which subsections (a), (e) and (i) of § 4 of the Norris-LaGuardia Act *unequivocally* say cannot be prohibited." [Emphasis supplied] At this point in his opinion the distinguished justice drops a footnote reading:
   "An injunction against a strike or peaceful picketing in breach of a collective agreement 'would require strong judicial creativity in the face of the plain meaning of Section 4,' Cox, Current Problems in the Law of Grievance Arbitration, 30 Rocky Mt.L.Rev. 247, 256, for, indeed, such an injunction 'would fly in the face of the plain words of Section 4 of the Norris-LaGuardia Act, the historical purpose of which was to make peaceful concerted activities unenjoinable without regard to the nature of the labor dispute.' Id., at 253."

7. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

irrespective of the forum selected by a plaintiff the substantive law to be applied is federal law.[8]

■ Removal of the action from a state court may be had upon motion of a defendant meeting the qualifications pre-

8. Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. at pp. 456–457, 77 S.Ct. at p. 918, 1 L.Ed.2d 972.

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. See Mendelsohn, Enforceability of Arbitration Agreements Under Taft-Hartley Section 301, 66 Yale L.J. 167. The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. See Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 351 [60 S.Ct. 285, 288, 84 L.Ed. 313]. Federal interpretation of the federal law will govern, not state law. Cf. Jerome v. United States, 318 U.S. 101, 104 [63 S.Ct. 483, 485, 87 L.Ed. 640]. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. See Board of Commissioners of Jackson County v. United States, supra [308 U.S.] at pages 351–352 [60 S.Ct. at pages 288, 289, 84 L.Ed. 313]. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

"It is not uncommon for federal courts to fashion federal law where federal rights are concerned. See Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367 [63 S.Ct. 573, 574–575, 87 L.Ed. 838]; National Metropolitan Bank v. United States, 323 U.S. 454 [65 S.Ct. 354, 89 L.Ed. 383]. Congress has indicated by § 301(a) the purpose to follow that course here. There is no constitutional difficulty. Article III, § 2, extends the judicial power to cases 'arising under * * * the Laws of the United States * * *.' The power of Congress to regulate these labor-management controversies under the Commerce Clause is plain. Houston East &

West Texas R. Co. v. United States, 234 U.S. 342 [34 S.Ct. 833, 58 L.Ed. 1341]. National Labor Relations Board v. Jones & Laughlin Corp., 301 U.S. 1 [57 S.Ct. 615, 81 L.Ed. 893]. A case or controversy arising under § 301(a) is, therefore, one within the purview of judicial power as defined in Article III."

A confirmatory gloss on Lincoln Mills, supra, and Dowd Box, supra n. 7, is found in Lucas Flour, supra n. 7, 369 U.S. at pp. 102–104, 82 S.Ct. at p. 576, 7 L.Ed.2d 593, to the following effect:

"In Dowd Box we proceeded upon the hypothesis that state courts would apply federal law in exercising jurisdiction over litigation within the purview of § 301 (a), although in that case there was no claim of any variance in relevant legal principles as between the federal law and that of Massachusetts. In the present case, by contrast, the Washington court held that there was nothing in § 301, 'limiting the substantive law to be applied,' and the court accordingly proceeded to dispose of this litigation exclusively in terms of local contract law. The union insists that the case was one to be decided by reference to federal law, and that under applicable principles of national labor law the strike was not a violation of the collective bargaining contract. We hold that in a case such as this, incompatible doctrines of local law must give way to principles of federal labor law. We further hold, however, that application of such principles to this case leads to affirmance of the judgment before us.

"It was apparently the theory of the Washington court that, although Textile Workers Union [of America] v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, 923, 1 L.Ed.2d 972], requires the federal courts to fashion, from the policy of our national labor laws, a body of federal law for the enforcement of collective bargaining agreements, nonetheless, the courts of the States remain free to apply individualized local rules when called upon to enforce such agreements. This view cannot be accepted. The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by

scribed in § 301(a) for coverage under that provision notwithstanding the local tribunal could, if the action had not been removed, have rendered a binding judgment therein.[9]

Removal, moreover, may be had, and an application to remand withstood, even if removal is effected only to be followed by a grantable motion to dismiss on the ground that though the cause is classifiable as a § 301(a) suit, Norris-LaGuardia forbids the award of the injunction sought.[10]

■ The court rejects as false in logic and historically unrealistic plaintiff's argument, founded largely on mere semantics,[11] whereby it is sought to interpret the introductory clause of Norris-La-

§ 301 to be decided according to the precepts of federal labor policy.

"More important, the subject matter of § 301(a) 'is peculiarly one that calls for uniform law.' Pennsylvania R. Co. v. Public Service Comm., 250 U.S. 566, 569 [40 S.Ct. 36, 37, 64 L.Ed. 1142]; see Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 167–169, [62 S.Ct. 491, 501–503, 86 L.Ed. 754]. The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes."

9. Fay v. American Cystoscope Makers, Inc., 98 F.Supp. 278, (S.D.N.Y.1951); Patriot-News Co. v. Harrisburg Printing Pressmen, 191 F.Supp. 568 (M.D.Pa. 1961); Central Metal Products, Inc. v. International Union, etc., 195 F.Supp. 70 (E.D.Arkansas 1951); Crestwood Dairy, Inc. v. John Kelley, etc., 222 F.Supp. 614 (E.D.N.Y.1963).

10. Fay v. American Cystoscope Makers, Inc., supra, 98 F.Supp. at page 281, where the following statement of principle appears:

"The suggestion that plaintiff should be permitted to compel defendant to litigate a federal claim in a state court when Congress has explicitly made available a federal forum is indefensible. Motion to remand is denied. Cf., Amalgamated Ass'n, etc., Motor Coach Employees of America v. Wisconsin Employment Relations Board, 340 U.S. 383 [71 S.Ct. 359, 95 L.Ed. 364], Id., 340 U.S. 416 [71 S.Ct. 373, 95 L.Ed. 389]."

To like effect: Crestwood Dairy, Inc. v. John Kelley, etc., supra. Illuminating also is the discussion, with additional citations supporting the thesis, to be found in the article "Strikes in Breach of Collective Agreements: Some Unanswered Questions," by Benjamin Aaron, 63 Col.Law Review (June 1963). The pertinent text begins at the final paragraph on p. 1042. It concludes at p. 1046 with the author's comment, concurred in by this court, that "the federal court does have both original jurisdiction of the case and the power to deal effectively with the substance of the litigation, even though it is forbidden to grant the injunction. Hence, I conclude that removal of the case from the state court should be allowed under Section 1441(a) [of Title 28 of the U.S.C.]."

11. It is fallacious to reason from the negative. "No Court of the United States" is vested with power, to an affirmative that state courts must therefore be possessed of such authority. The technical name logicians assign to the paralogism is the fallacy of "false opposition" or "false disjunction." See: Introduction to Logic and Scientific Method," Cohen and Nagel, 1934, at p. 386.

The fallacy would be compounded were the multivocal term "without jurisdiction", constituting in its context no more than a loosely expressed equivalent for the forthright biblical imperative "Thou shalt not", to be construed in the unnecessarily restricted sense of denying to the federal court the authority even to receive a case for determination of an issue under federal law. For the multiple senses in which the word "jurisdiction" is used and understood, see Columbia Law Review, op. cit. at pp. 1043, 1044. For the logical fallacy see Logic

Guardia (29 U.S.C. § 104) as though it read, with interpolations italicized, as follows:

"No court of the United States shall have· *but the courts of the several states are possessed of,* jurisdiction *to docket a case if the relief sought in such case would require the court* to issue any restraining order or temporary or permanent injunction" etc.

Lincoln Mills, considering the cognate question as to "whether § 301(a) is more than jurisdictional" laments that "[t]he legislative history of § 301 is somewhat cloudy and confusing." More cheerfully, however, the court continues, "But there are a few shafts of light that illuminate our problem." We need not essay to dissipate the crepuscular shadows that obscure the origins of Norris-LaGuardia to perceive its objectives and intent. For these to come sharply into focus one needs but to call to mind the spiritual fibre and texture of the sponsors of the measure the title of which serves as their monument and has become a byword of honorable connotation. May we with reason ascribe to that senator and that congressman, both liberal in their outlook in matters affecting the interests of labor, both mindful of labor's grievance, at the time not wholly without justification, of injunctions improvidently issued and destructive of labor's rights, and determined by their joint effort to bring an end to these "abuses" by extirpating the judicial power thus impugned, an obreptitious intent to bestow upon the state courts an exclusiveness of jurisdiction not hitherto possessed by them to issue or refuse such injunctions against labor, while at the same time withdrawing from the federal courts that power as well as the correlative power to remove? Surely, when it is, as the federal courts have held in decisions cited above, federal law

that is to be construed and federal law applied with uniform force in all the courts of the land, it is a strained construction indéed which would rule that federal courts have, at the very hand of those who promulgated labor's bill of rights, been rendered impotent to keep those rights inviolate.

Settle order on notice.

and Scientific Method, op. cit. p. 377 where under the headnote "Semilogical or Verbal Fallacies" the authors comment that, "A fallacy takes place * * * when one asserts that certain premises necessitate a given conclusion and when

this claim is false because of the absence of real connection, an absence *covered up by the use of the same word for two different things."* [Emphasis supplied]