Pitaro, Digangi & Gallagher, by Vincent L. Pitaro, Forest Hills, N. Y., for the motion.

Cohen & Weiss, by Bruce H. Simon, New York City, for Local Union No. 282.

**VINCENT INGINO, INC., Plaintiff,**

v.

**CERTIFIED PREFERRED, INCORPORATED, Local Union No. 282, et al., Defendants.**

No. 63–C–1100.

United States District Court
E. D. New York.

Oct. 11, 1963.

RAYFIEL, District Judge.

The plaintiff, with the consent of the defendant Local Union 282, has made an oral motion to remand this case to the Supreme Court of the State of New York, County of Queens.

The plaintiff commenced the action in the aforesaid Court to enjoin the defendants from breaching a certain agreement dated August 7, 1961 between the defendant Certified and the plaintiff herein, wherein and whereby the plaintiff agreed to purchase and the defendant Certified agreed to sell a minimum of 600,000 cubic yards and maximum of 750,000 cubic yards of a base material for roads known as bankrun during the period beginning September 1, 1961 and terminating on March 1, 1964. The complaint alleged that the defendant Certified "without any reason or explanation, and without just cause therefor, notified the plaintiff that commencing October 7, 1963 it would not sell to the plaintiff the material covered by the said agreement between them as set forth in paragraph 7 hereof, although the plaintiff has duly performed all of the terms of the said agreement with the defendant Certified.

"That defendant Certified further notified the plaintiff that the former's refusal to perform obligations under the said contract between them is based solely on the request and final notice of defendant Union to effect that if defendant Certified sells any further materials on or after

October 7, 1963 to plaintiff, the defendant Union will instruct its members who are in the employ of defendant Certified to refused (sic) to operate defendant Certified's vehicles. That upon information and belief such orders have already been issued and (sic) by the defendant Union to its members in the employ of Certified."

The defendant Local Union 282 by petition dated October 8, 1963 removed the case to this Court on the ground that the allegations of the complaint "would, if true, constitute a violation of Section 8 (b) (4) of the National Labor Relations Act, as amended, 29 U.S.C. 158(b) (4), and would therefore constitute the statement of a claim pursuant to Section 303 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Section 187. The above described action is therefore a civil action over which this Court has original jurisdiction under the provisions of 29 U.S.C., Section 187(b), and 28 U.S.C. Sections 1331 and 1337. * * " The plaintiff contends that there is no labor dispute as contemplated by the National Labor Relations Act or the Labor Management Relations Act and that this case should be remanded to the Supreme Court of the State of New York, County of Queens, where it was commenced. It is the contention of the defendant Local Union 282 that the complaint describes "the classic example of a secondary boycott" which is an Unfair Labor Practice under Section 158(b) (4) of Title 29, U. S.C. Sec. 8(b) (4) of the National Labor Relations Act.

I disagree. In my opinion no labor dispute as that term is defined in the Taft-Hartley and Norris-LaGuardia Acts, is involved in this case. A secondary boycott has been defined in the case of Duplex Printing Press Co. v. Deering, 254 U.S. 443, at page 466, 41 S. Ct. 172, at page 176, 65 L.Ed. 349, as "a combination not merely to refrain from dealing with complainant, or to advise or by peaceful means persuade complainant's customers to refrain ("primary boycott"), but to exercise coercive pressure upon such customers, actual or prospective, in order to cause them to withhold or withdraw patronage from complainant through fear of loss or damage to themselves should they deal with it." In the case at bar we have just the reverse situation. The complaint alleges that the Union, through coercive pressure on Certified, caused it to breach its agreement with the plaintiff. The complaint contains no allegation that the Union has a labor dispute with the plaintiff. As a matter of fact, the affidavits submitted by the plaintiff, which are not controverted by the defendant Union, allege that the independent operators of the trucks which it hires are all members of Local Union 282. Judge Learned Hand, in the case of International Brotherhood of Electrical Workers, Local 501 et al. v. N. L. R. B., 2 Cir., 181 F.2d 34, at page 37 (Affd. 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299) defined a secondary boycott as follows: "The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. *Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands*". (Emphasis mine.)

These authorities were discussed by Judge Galston in the case of Douds on Behalf of N. L. R. B. v. Sheet Metal Workers International Association, D.C., 101 F.Supp. 273, at page 277, in which he said, "These authorities are binding upon this Court, and in consequence it follows that unless the petitioner herein has established that the act or acts of the respondent constitute a secondary boycott, an injunction cannot issue. *Such a boycott exists when a labor organization having a labor dispute with employer A induces or encourages employees of Employer B, with whom the Union has no dispute, to refuse to handle goods or perform services for employer B with the object of causing B to cease to do business with A, the employer with whom the Union is involved in a labor dispute.* In other words, what is prohibited is any attempt to bring pressure to bear on 'secondary' employers who are neutral in the labor dispute for the purpose of

effecting, by such measures, ultimate pressure on the 'primary' employer." In the case at bar there appears to be no labor dispute between Local Union 282 and Certified and, clearly, there is no labor dispute between the said Union and the plaintiff. The facts in Douds on Behalf of N. L. R. B. v. Sheet Metal Workers International Association, supra, were even stronger than those in the case at bar and in that case Judge Galston held that there was no secondary boycott. See also Kon-Tempo Furniture, Inc. v. Kessler, D.C., 145 F.Supp. 341.

In view of the foregoing I find that the removal of the case to this Court was improvident and, accordingly, I direct that it be remanded to the Supreme Court of the State of New York, County of Queens.

This constitutes the order on the motion.