**JODY FAIR, INC., trading as Jomax Apparel Company, Plaintiff,**

**v.**

**David DUBINSKY, as President of International Ladies Garment Workers Union, AFL–CIO, Charles Kreindler, as President of Local 25 of International Ladies Garment Workers Union, AFL–CIO, Charles S. Zimmerman, as President of Joint Board of Dress & Waistmakers Union of Greater New York, Defendants.**

United States District Court
S. D. New York.

Jan. 16, 1964.

Lieberman, Katz & Aronson, New York City, for defendant Charles Kreindler, as President of Local 25 of International Ladies Garment Workers Union, AFL-CIO.

Maurice Knapp, New York City, for plaintiff.

Morris P. Glushien, New York City, for defendant David Dubinsky, as President of International Ladies Garment Workers Union, AFL-CIO.

WEINFELD, District Judge.

Plaintiff moves, pursuant to 28 U.S.C. § 1447(c), to remand this action to the Supreme Court of the State of New York, from which it was removed to this Court upon the petition of the defendants, International Ladies Garment Workers

Union, AFL-CIO, and its Local 25.[1] There is no diversity of citizenship.

Essentially, the defendants' petition for removal, filed pursuant to 28 U.S.C. § 1441(b), alleges that the complaint asserts a cause of action of which this Court has original jurisdiction founded upon a claim or right arising under the laws of the United States, more particularly, section 303(b) of the Labor Management Relations Act of 1947.[2]

The plaintiff, on the other hand, in seeking remand to the State Court, alleges that absent diversity, this Court is without jurisdiction. It challenges the defendants' interpretation of the complaint as alleging a claim under the Labor Management Relations Act and, to the contrary, asserts that it sets forth a common law cause of action of prima facie tort recognized by the New York State courts. The essence of such a claim is a malicious intention to inflict injury or damage upon one without excuse or justification.[3]

The complaint, of course, is controlling and must be read as drawn by the plaintiff, unaided by the petition for removal.[4] It contains no allegation that a claim or right is asserted under any Federal law. Thus, the burden is upon the defendants to establish their contention that the suit is one arising under Federal law.[5]

The complaint centers about a debt due and owing from Aansworth Ltd., a manufacturer of dresses and man-tailored women's shirts in New York City, which had been under contract with the defendants ILGWU and Local 25. Aansworth is now a debtor in a Chapter XI proceeding pending in this Court. Local 25 filed claims for arrears of health and welfare fund contributions owing by said Aansworth under its union contract. Max Schneier, who was the President and principal stockholder of Aansworth,

---

1. A third defendant, Joint Board of Dress & Waistmakers Union of Greater New York, although not yet served with process, has indicated acquiescence in the removal petition.

2. Section 303 provides:
   "(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b) (4) of the National Labor Relations Act, as amended.
   "(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit." 61 Stat. 159 (1947), 29 U.S.C. § 187 (1958), as amended, 73 Stat. 545 (1959), 29 U.S.C. § 187 (Supp. II, 1959–60).
   Section 8(b) provides:
   "It shall be an unfair labor practice for a labor organization or its agents—
   * * *
   "(4) * * * (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
   * * *
   "(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, * * *." 61 Stat. 141–42 (1947), as amended, 73 Stat. 542–43 (1959), 29 U.S.C. § 158(b) (4) (Supp. II, 1959–60).

3. Advance Music Corp. v. American Tobacco Co., 296 N.Y. 79, 70 N.E.2d 401 (1946); American Guild of Musical Artists, Inc. v. Petrillo, 286 N.Y. 226, 36 N.E.2d 123 (1941); Opera on Tour, Inc. v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267 (1941); Al Raschid v. News Syndicate Co., 265 N.Y. 1, 191 N.E. 713 (1934); Benton v. Kennedy-Van Saun Mfg. & Eng. Corp., 2 App.Div.2d 27, 152 N.Y.S.2d 955 (1st Dep't 1956); Ruza v. Ruza, 286 App.Div. 767, 146 N.Y.S.2d 808 (1st Dep't 1955).

4. Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Great Northern R.R. v. Alexander, 246 U.S. 276, 281, 38 S.Ct. 237, 62 L.Ed. 713 (1918).

5. Hat Corp. of America v. United Hatters, 114 F.Supp. 890 (D.Conn.1953).

is also the President of Jody Fair, Inc., the plaintiff herein. Jody Fair, Inc. maintains a place of business in York, Pennsylvania, as a contractor of man-tailored women's shirts, and does substantial work for various New York manufacturers.[6]

The complaint charges that although neither Schneier nor the plaintiff was liable for the Aansworth health and welfare arrears, the defendants threatened that unless the debt were paid in full by the plaintiff, neither it nor its officers could operate in the needle industry; that to compel the plaintiff and its President to pay the arrears the defendants conspired with one another, wilfully and maliciously and with intent to injure the plaintiff and without legal justification. Specifically it is charged that:

(a) The defendant Local 25 had agreements with named manufacturers who, up to April 1963, did business with the plaintiff; that although the agreements required the named manufacturers to obtain their garments from contractors who were under contract with the Local 25, due to its inability to furnish adequate labor supply over a period of many years, the Local waived the provisions of the agreement and permitted such manufacturers to obtain their supply of garments from nonunion sources, including the plaintiff; that in the Spring of 1963 the defendants threatened the said manufacturers that unless they discontinued business with the plaintiff, the waiver no longer would be effective, but if they discontinued business with the plaintiff, they could, as in the prior years, continue to obtain their labor supply from non-union sources or other sources not under the jurisdiction of the ILGWU.

(b) Another of plaintiff's customers, a nonunion manufacturer, had, over a period of seven years, done business with the plaintiff and its predecessor; that in May 1963 the defendant Local picketed said manufacturer as unfair to labor in using nonunion labor, but notwithstanding notified the manufacturer that if it ceased doing business with the plaintiff the picketing would be discontinued and it would be permitted to receive, as in the past, its supply of garments from nonunion shops and other sources not under the jurisdiction of ILGWU.

The complaint then alleges that as a result of the threats and the picketing so directed against the named manufacturers, they ceased doing business with the plaintiff, whereupon the picketing and threats were discontinued and the manufacturers, pursuant to the assurances given them by the defendant unions, were again permitted to obtain garments from nonunion shops or from nonaffiliated contractors.

The complaint further alleges that the acts of defendants were not in furtherance of their labor union activities or by reason of a labor dispute, but solely for the purpose of inflicting injury upon the plaintiff.

Thus the plaintiff asserts that the essence of its cause of action is the use by the defendants of their economic power for purposes unrelated to union recognition, wages, hours, terms and conditions of employment or other union activity, but solely to coerce it to pay a debt dischargeable in or subject to an arrangement in the Chapter XI proceeding for which it was not legally liable. Accordingly it contends that the action is one to recover for an intentional injury without legal justification, and as such is maintainable as a prima facie tort within the jurisdiction of the New York State courts.

The defendants, however, contend that although it is true that plaintiff has not referred to or bottomed its complaint upon the Labor Management Relations Act, the alleged activities attributed to them are within the ban of the secondary boycott provision of section 8 of the Act[7]

6. Plaintiff is engaged in commerce or in an industry affecting commerce. That its business with New York manufacturers affects commerce is not in dispute.

7. 61 Stat. 141–42 (1947), as amended, 73 Stat. 542–43 (1959), 29 U.S.C. § 158(b) (4) (B) (Supp. II, 1959–60).

as an unfair labor practice. Accordingly they urge that whether the plaintiff wills it or not, its sole cause of action, if any, for any claimed injury by reason of the defendants' conduct is under the Act and within the original jurisdiction of this Court.[8]

■ We deal here with a matter of pleading, and for the purposes of this motion to remand the allegations of the complaint must be accepted at face value notwithstanding the difficulty of deciding whether the subject matter thereof has been withdrawn from state jurisdiction.[9]

■ The Court concludes that plaintiff's complaint, fairly read as drawn, alleges a prima facie tort at common law and that it may not be read as asserting a claim arising under section 303 of the Act. The prime object of the defendants' acts as alleged in the complaint is an intentional purpose to inflict injury and damage upon the plaintiff without legal justification in order to compel it to pay a debt for which it is not legally liable. The circumstance that the means employed to achieve that objective happen to parallel conduct condemned as an unfair labor practice does not change the essential nature of plaintiff's cause of action. The picketing and the threats to withdraw the waiver of the provisions of the agreements whereby garments were obtainable by the manufacturers from nonunion sources were but the means allegedly used to coerce the manufacturers to stop doing business with the plaintiff in order to achieve the end and wrongful objective—to compel the plaintiff to pick up the Aansworth debt. In sum, the plaintiff charges that the defendants exerted their power for a purpose beyond their legitimate labor objectives.[10]

■ The defendants make the further argument that even if the complaint be construed as alleging a common law prima facie tort, recognized under New York law, the Congress, by the enactment of section 8 of the Act, has preempted the entire field of secondary activity involving unfair labor practices, and that the state courts are excluded from entertaining such a tort action for the recovery of damages where, as here, there is no claim of violence. In short, that to permit the suit to be maintained amounts to State interference with national power in a field where Congress has exercised its authority. In support of their position, defendants rely on cases such as Weber v. Anheuser-Busch, Inc.[11] and San Diego Bldg. Trades Council, v. Garmon.[12] Those cases stand for the proposition that wherever labor activity is arguably protected or prohibited by sections 7 and 8 of the Act, respectively, then State regulation, either by way of injunctive relief or damages, must yield to the primary jurisdiction of the National Labor Relations Board. They are inapposite and readily distinguishable; the activities therein not only were protected or prohibited under the Act, but were in furtherance of traditional objectives of labor union efforts; they involved existing labor disputes or unfair labor practices. Here the allegation of the complaint is that the actions of the defendants "were not committed in furtherance of their labor union activities or by reason of a labor dispute, but solely for the purpose of inflicting injury on the plaintiff and its officers, and to eliminate the plaintiff and its officers from the needle trade."

Moreover, the instant case is further distinguished from those relied upon by the defendants since the National Labor Relations Board is without power to

8. See note 2 supra.

9. Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 481, 75 S.Ct. 480, 99 L.Ed. 546 (1955).

10. See International Union, U. A. W. v. Wisconsin Employment Relations Bd., 336

U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949).

11. 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955).

12. 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

entertain any unfair labor practice proceeding with respect to the defendants' alleged conduct in view of the express exception in section 8(e), which makes the ban against secondary boycotts under section 8(b) (4) (B) inapplicable generally to the needle trade unions.[13] The defendants' position, if upheld, would deprive the plaintiff of any remedy for a common law right of action in a state court for a claimed injury, and leave it without relief in the Federal courts. The conduct which plaintiff attributes to the defendants—the exertion of their economic power to compel it to pay a debt for which it has no legal liability—is not the type of conduct with which either section 7 or section 8 of the Federal act deals. To find that Congress has foreclosed state action upon a common law tort upon the allegations here presented of conduct unrelated to a labor dispute would require a clearer declaration of such Congressional purpose than appears.[14] Nothing has been presented to indicate that in this peripheral area there was such a purpose to withdraw from the states power to grant relief.

The motion to remand is granted. The allegations of the complaint may remain just that and nothing more, and should it appear that, contrary to the plaintiff's charges, the defendants' actions were in furtherance of their traditional functions as labor unions, they still remain free to press the plea of lack of jurisdiction in the state courts.

13. Section 8(e) provides in part:
   " * * * [F]or the purposes of this subsection (e) and section 8(b) (4) (B) the terms 'any employer', 'any person engaged in commerce or an industry affecting commerce', and 'any person' when used in relation to the terms 'any other producer, processor, or manufacturer', 'any other employer', or 'any other person' shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry * * *." 73 Stat. 544 (1959), 29 U.S.C. § 158(e) (Supp. II, 1959–60).

The exemption seeks to avoid a recurrence of the evils which plagued the industry and resulted from subcontracting activities. See, e. g., 2 Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, at 1384–85, 1818, 1829. See also Greenstein v. National Skirt & Sportswear Ass'n, 178 F. Supp. 681 (S.D.N.Y.1959), appeal dismissed, 274 F.2d 430 (2d Cir. 1960) (per curiam).

14. Cf. International Union, United Automobile Workers v. Rusell, 356 U.S. 634, 642–643, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958).