**BIG APPLE SUPERMARKETS, INC.,**
Plaintiff,

v.

Frank DUTTO, individually and as President of Bakery Workers Union Local 3 B&C, Louis Genuth, individually and as President of Bakery Workers Union Local 50 A.B.C., "John" Cross, individually and as President of Bakery Workers Union Local 450 A.B.C., Joseph Clark, individually and as President of Bakery Drivers Union Local 550 I.B.T. and John Strauss, individually and as President of Bakery Drivers Union Local 802 I.B.T., Defendants.

No. 64–C–1159.

United States District Court
E. D. New York.
Jan. 6, 1965.

State of New York, County of Kings, seeking an injunction and damages and alleging in substance that plaintiff operates a chain of supermarkets and that the defendants are labor unions representing bakery workers and bakery drivers; that none of the defendants represent the employees of the plaintiff nor seek to represent the employees of the plaintiff; that the plaintiff sells, among other products, "snack products" distributed by Gourmet Bakers, Inc. and Gourmet Snacks, Inc. (both referred to as "Gourmet"), which are New Jersey corporations with their principal place of business in New Jersey; that the defendants do not represent nor seek to represent the employees of Gourmet nor do they represent or seek to represent the employees of the manufacturers of the products delivered by Gourmet and sold by the plaintiff; that the defendants have picketed plaintiff's supermarkets in an attempt to dissuade plaintiff's customers and potential customers from purchasing Gourmet products, exhibiting placards and distributing circulars claiming that the producers of Gourmet products were paying substandard wages and that this disparity constituted a threat to local labor standards, and that such picketing is a form of "economic pressure intended to create an embargo against imports of baked goods into the State of New York".

The complaint was accompanied by an order to show cause, returnable December 2, 1964 in the State court, why the defendants should not be enjoined from picketing plaintiff's supermarkets. On December 1, 1964, defendants filed a petition removing the action to this Court upon the ground that the complaint in reality alleges a violation of Section 8(b)(4) of the Labor Management Relations Act of 1947, as amended ("the Act"), 29 U.S.C.A. § 158(b)(4), and consequently states a claim pursuant to Section 303 of the Act, as amended [1]

Bergner & Bergner, New York City, for plaintiff, Walter Bergner, New York City, of counsel.

Cohen & Weiss, New York City, for defendant Local 802, Bruce H. Simon, New York City, of counsel.

Cooper, Ostrin, Devarco & Ackerman, New York City, for defendant Local 550, Robert Sand, New York City, of counsel.

O'Dwyer & Bernstien, New York City, for defendant Local 50.

Schenck & Schenck, New York City, for defendant Local 450.

Cohn & Glickstein, New York City, for defendant Local 3.

BARTELS, District Judge.

On November 30, 1964, plaintiff filed a complaint in the Supreme Court of the

---

1. Section 303 provides:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair

("Section 303"), 29 U.S.C.A. § 187, over which this Court has original jurisdiction and hence is removable pursuant to 28 U.S.C.A. § 1441.

I

The issue here litigated is whether this action is a removable one based upon the defendants' contention that this Court has original jurisdiction of the claim under Section 303. The determination of this question depends solely upon the allegations of the complaint. " 'The "frame of reference" on a motion to remand a case to the State court, is contained within the four corners of the complaint, unaided by the answer or petition for removal.' " Associated Tel. Co. v. Communication Workers of America, C.I.O., S.D.Cal.1953, 114 F.Supp. 334, at 336; see also H. N. Thayer Co. v. Binnall, D.C.Mass.1949, 82 F.Supp. 566; Checker Taxi Co. v. Dugan, D.C.Mass.1952, 104 F.Supp. 34; Wright & Morrissey, Inc. v. Burlington Local No. 522, D.C.Vt.1952, 106 F.Supp. 138. Upon a motion to remand the burden of establishing jurisdiction in this Court rests upon the defendants who have removed the case. The fact that the complaint contains a demand for damages as well as injunctive relief does not bring the case within the removal act. The facts related in the complaint are the criteria, not the nature of relief sought in the State court.[2]

Defendants argue that properly construed, the complaint sets forth an unfair labor practice as described in Section 8(b)(4) of the Act, and that this Court has original jurisdiction of such a claim under Section 303. This section provides that anyone who shall be injured in his business by reason of "any activity or conduct defined as an unfair labor practice in section 8(b) (4) of the National Labor Relations Act, as amended" may sue therefor in any district court of the United States.[3] Defendants further contend that (1) regardless of how artfully drawn, the complaint sets forth "the traditional charge of a 'secondary boycott' " under Section 303, and (2) plaintiff's assertion that it does not seek relief under the Federal law but under the State law is immaterial if in fact it has asserted a Federal claim. In support of their position they cite a number of authorities[4] which in effect hold that the National Labor Relations Board ("the Board") possesses exclusive jurisdiction over union activities falling within the category of "unfair labor practices", and that neither State nor Federal courts may exercise jurisdiction in connection with such union activities except when a complaint alleges activities within the ambit of Section 8(b)(4) of the Act and is filed by a private litigant under Section 303 seeking damages, in which event the action may be instituted either in the district court or in any other court having jurisdiction of the parties. The citation of these authorities does not advance the solution of the problem because the question to be decided is whether the activities specified in the complaint actually fall within the proscription of Section

---

labor practice in section 8(b) (4) of the National Labor Relations Act, as amended.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

2. Hat Corp. of America v. United Hatters, D.C.Conn.1953, 114 F.Supp. 890; Jody

Fair, Inc. v. Dubinsky, S.D.N.Y.1964, 225 F.Supp. 695.

3. Labor Management Relations Act of 1947, as amended, § 303, 29 U.S.C.A. § 187.

4. San Diego Building Trades Council, etc. v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775; Local 24 of the International Brotherhood of Teamsters, etc. v. Oliver, 1959, 358 U.S. 283, 297, 79 S.Ct. 297, 3 L.Ed.2d 312; Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 481, 75 S.Ct. 480, 99 L.Ed. 546; Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton, 1964, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280.

8(b)(4). The other authorities [5] cited by the defendants are in the same category because they simply hold that remand will be refused and removal granted under Section 303 when the union activities specified in the complaint are those prohibited by Section 8(b)(4).

Plaintiff contends that this case must be remanded to the State court because the complaint specifies that the picketing conducted is directed solely to consumers and not to the plaintiff and its employees or persons making deliveries to the plaintiff and expressly states that there is no labor dispute at all predicated upon any employer-employee relationship, and that in the absence of a labor dispute there can be no "secondary boycott" which is necessary if this Court is to retain jurisdiction under Section 303. In reply the defendants point out that there can be a labor dispute "regardless of whether the disputants stand in the proximate relation of employer and employee", § 2(9) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 152(9), citing § 13(c) of the Norris LaGuardia Act, 29 U.S.C.A. § 113(c), which contains a similar definition, and Marine Cooks & Stewards, AFL v. Panama Steamship Co., 1960, 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797; May's Furs and Ready-to-Wear, Inc. v. Bauer, 1940, 282 N.Y. 331, 26 N.E.2d 279, and Liner v. Jafco, Inc., 1964, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347. The first two cases hold that injunctive relief cannot be granted when a labor dispute exists within the meaning of the Norris-LaGuardia Act or within the meaning of Section 876–a of the New York Civil Practice Act (now Sec. 807 of the Labor Law, McKinney's Consol. Laws, c. 31), which in substance contains the same definition. The Liner case also held that injunctive relief was barred to the State court when the facts showed that the existence of "a labor dispute" was at least arguable and that hence such controversy lay within the exclusive power of the Board. Obviously, these authorities are not determinative of the final resolution of the issue presented.

Of course if there is no labor dispute, that terminates the jurisdiction of this Court. On the other hand, a finding that there is a labor dispute does not establish the jurisdiction of this Court.[6] Labelling the claim "a labor dispute" is insufficient because it does not follow from such a premise that the complaint therefore describes a secondary boycott. The Court may assume without deciding that there is "a labor dispute" and nevertheless reach the conclusion that it has no Section 303 jurisdiction of this action. To contend that this Court has original jurisdiction to entertain the action because there was "a labor dispute" and at the same time to argue that it has no jurisdiction under the Norris-LaGuardia Act to grant the relief sought in the complaint is to resort to what Mr. Justice Frankfurter might describe as "a fox-hunting theory of justice".[7] The crucial issue is whether the facts specified in the complaint describe conduct which falls within the prohibition of Section 8(b)(4) of the Act. "The gravamen of a

---

5. Table Talk Pies v. Bakery and Pastry Drivers Local 802, E.D.N.Y.1964, 237 F.Supp. 514; Leggett v. O'Rourke, S.D.N.Y., 64 Civ. 2934, 237 F.Supp. 561; Bruno v. O'Rourke, E.D.N.Y.1963, 222 F.Supp. 612; Prospect Dairy, Inc. v. Dellwood Dairy, N.D.N.Y.1964, 237 F. Supp. 176, cf., Crestwood Dairy, Inc. v. Kelley, E.D.N.Y.1963, 222 F.Supp. 614; Tri-Boro Bagel Co., Inc. v Bakery Drivers Local 802, E.D.N.Y., 1963, 228 F. Supp. 720.

6. Cf., Ingino v. Certified Preferred, Inc. and Local Union 282, E.D.N.Y.1963, 222 F.Supp. 109; Jody Fair, Inc. v. Dubin-sky, supra, where the court found there was no labor dispute from the facts alleged. Here too it may be difficult to find the existence of a labor dispute in view of the fact that the plaintiff does not assert that the defendants are seeking recognition or any improvement with respect to wages or hours or terms and conditions of employment.

7. United States ex rel. Touhy v. Ragen, 1951, 340 U.S. 462, 473, 71 S.Ct. 416, 422, 95 L.Ed. 417 (concurring opinion); see Hat Corp. of America v. United Hatters, supra.

secondary boycott is that its sanctions bear, not upon the employer *who alone is a party to the dispute*, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands." (Emphasis supplied) International Brotherhood of Electrical Workers, Local 501 v. N. L. R. B., 2 Cir. 1950, 181 F.2d 34, 37.[8] "Thus, there are two employers in every secondary boycott resulting from a labor dispute." [9] A boycott to be secondary must be predicated upon a dispute that is primary. A simple "labor dispute", as that term is used to bar injunctive relief, without more, will not support a secondary boycott. This conclusion is supported by the proviso at the end of Section 8(b)(4) of the Act which excludes from its prohibition publicity "for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a *primary* dispute and are distributed by *another employer*, * * *." (emphasis supplied).

▇▇ A fair and reasonable construction of the complaint compels the conclusion that it contains no statements which indicate, either expressly or by inference, that there is a primary dispute between any employer or any union. Consequently, the picketing alleged in the complaint sets forth no secondary boycott under Section 8(b)(4) of the Act providing this Court with Section 303 jurisdiction.

## II

▇▇ It is also pertinent to add that the activities of the defendants specified in the complaint would not constitute a Section 8(b)(4) secondary boycott even if the complaint described a primary labor dispute between the defendants and an employer. The conduct set forth in the complaint is the same type of picketing which was present in N. L. R. B. v. Fruit & Vegetable Packers and Warehousemen, Local 760, 1964, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129, where the union called a strike against the fruit packers and warehousemen doing business in Yakima, Washington and picketed 46 Safeway stores in Seattle, Washington, urging consumers not to buy Washington State apples. In that case a primary dispute admittedly existed. The Supreme Court held that while this particular kind of picketing fell literally within the statutory prohibition of Section 8(b)(4) of the Act, it did not fall within the spirit nor the intention of the framers of the Act and hence was not proscribed, stating: "We come then to the question whether the picketing in this case, confined as it was to persuading customers to cease buying the product of the primary employer, falls within the area of secondary consumer picketing which Congress did clearly indicate its intention to prohibit under § 8(b)(4)(ii). We hold that it did not fall within that area, and therefore did not 'threaten, coerce, or restrain' Safeway." (84 S.Ct. p. 1071) The union activity was treated as product picketing and as an expansion of the primary dispute to a secondary situs.[10]

The Court concludes that the defendants have failed to discharge the burden of establishing their contention that this action is one arising under Federal law and consequently the motion to remand for lack of jurisdiction is granted.

Settle order.

8. See Ingino v. Certified Preferred, Inc. and Local Union 282, supra; Lesnick, The Gravamen of the Secondary Boycott, 62 Colum.L.Rev. 1363 (1962).

9. Cox, Landrum-Griffin Amendments to the National Labor Relations Act, 44 Minn.L.Rev. 257, 271 (1959).

10. Note, Picketing and Publicity under Section 8(b)(4) of the LMRA, 73 Yale L.J. 1265 (June 1964).