Elisheva LOWE, surviving wife of Steven Ralph Lowe, also known as Steven Lowe and Steven R. Lowe, Deceased, on behalf of herself and on behalf of Ariel Theodore Chanan Lowe, the surviving infant child of the Deceased, and as Administratrix of the Estate of Steven R. Lowe, Deceased, et al., Plaintiffs,

v.

TRANS WORLD AIRLINES, INC., et al., Defendants.

No. 75 Civ. 790.

United States District Court, S. D. New York.

June 23, 1975.

Speiser & Krause, New York City, for plaintiffs.

Bigham, Englar, Jones & Houston, New York City, for defendants; John J. Martin, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

Plaintiffs brought this action in the Supreme Court, New York County, to recover damages for themselves and others they represent on account of the deaths of two passengers in a crash on September 7, 1974, of a 707 jet aircraft owned and operated by defendant TWA. The complaint alleged that the airplane was on a regularly scheduled flight from Tel Aviv to New York City, with stops in Athens and Rome; that defendant Charles C. Tillinghast, TWA's Board Chairman and Chief Executive Officer, a New York citizen and resident, had been "responsible to direct and control inspection, operation, security and maintenance procedures * * * as well as determining security measures and safety policy" on TWA flights; that defendant J. Steele, "as Director of Security for TWA, was charged with providing

for the safety and security of passengers * * * and [for] security measures and safety policy"; that the flight in question ended "when defendant's aircraft exploded and crashed into the Ionian Sea killing all aboard shortly after takeoff following a regularly scheduled stop in Athens, Greece en route to Rome, Italy"; that defendants were guilty of "negligence, gross negligence, wilful misconduct, wrongful acts and omissions and wilful and wanton negligence [in various respects] and * * * wilful misconduct in failing to take all necessary measures to avoid interference with the safety of the * * * passengers and in failing to prevent their wrongful deaths."

Evidently forecasting the central factual theory of plaintiffs—that a bomb planted while the aircraft was on the ground later exploded and caused the disaster—the complaint goes on to allege specific acts and omissions deviating from proper safety precautions, e. g., failure to inspect baggage and freight properly; failure to require a "cooling off" period before loading freight and baggage "in order to prevent use of a timed explosive device on said flight"; failure to follow testing and inspection procedures that would "thwart an attempted bomb placement on the aircraft"; omission of suitable precautions "after a bombing attempt was made on the same number flight at an earlier date"; and other allegations along similar lines.

In a second cause of action, against TWA alone, plaintiffs invoke the Warsaw Convention and the Montreal Agreement, claim the carrier is absolutely liable, and seek the upper limit of $75,000 each for the respective claimants under those treaties.

Defendants removed the case to this court on a petition under 28 U.S.C. § 1441(a) and (b) asserting that the case is within our original (and exclusive) jurisdiction under the Death on the High Seas Act, ("DOHSA"), 46 U.S.C. § 761,* because the airplane crashed at a point in the Ionian Sea 100 miles west of Araxos, Peleponnesus, Greece. Plaintiffs have moved to remand. Defendants have cross-moved either for dismissal on the ground of the state court's initial lack of jurisdiction or for retention of the case in admiralty on our nonjury calendar. The resulting issues, explored in learned and challenging papers on both sides, reflect something of the price and the rewards of our federal jurisprudence. Without pretending to a thorough or exhaustive treatment, the court will outline the reasons leading to the remand plaintiffs seek.

■ 1. Plaintiffs' initial ground for their motion is not sustained. They argue that (a) the removal papers themselves asserted *exclusive* federal jurisdiction; (b) this meant, of course, an absence of state jurisdiction; (c) the removal jurisdiction, being derivative from the state's, *Freeman v. Bee Machine Co.*, 319 U.S. 448, 449, 63 S.Ct. 1146; 87 L.Ed. 1509 (1943); *Lambert Run Coal Co.* v. *Baltimore & O. R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922), never came into being; and so there should be a remand. However that logic might appeal as an original proposition, there is a compelling weight of authority against it. On the foregoing premises, the proper course would be the dismissal defendants seek, not a remand. *General Inv. Co.* v. *Lake Shore & Mich. So. Ry. Co.*, 260 U.S. 261, 287–88, 43 S.Ct. 106, 67 L.Ed. 244 (1922); *Federal Sav. & Loan Ins. Corp.* v. *Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969);

* "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

*Koppers Co.* v. *Continental Cas. Co.*, 337 F.2d 499, 501–02 (8th Cir. 1964); 1A J. Moore, Federal Practice ¶ 0.157[3], at 86 & n. 6 (2d ed. 1974); C. Wright, Law of Federal Courts § 38, at 132 & n. 19 (2d ed. 1970).

2. The complaint says nothing whatever about DOHSA. It appears to allege primarily a dastardly wrong perpetrated on land (in Tel Aviv or Athens or wherever) and wrongful failure (also on land) to detect or prevent, or protect the passengers against, that deadly action. The complaint does not allege, as it was not required to, what law is thought to support the major claims in the first cause of action, but we may anticipate possibilities ranging at least from Israel to New York, via Greece and Italy. The point of main interest now is that neither cause of action counts at all . upon DOHSA.

 It is familiar law that "the party who brings a suit is master to de- cide what law he will rely upon. * * *" *The Fair* v. *Kohler Die & Spec. Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). See also *Warner Bros. Records, Inc.* v. *R. A. Ridges Dist. Co.*, 475 F.2d 262 (10th Cir. 1973); *Brough* v. *United Steelworkers*, 437 F.2d 748, 749 (1st Cir. 1971); *M. & D. Simon Co.* v. *R. H. Macy & Co.*, 152 F.Supp. 212, 216 (S.D.N.Y. 1957); C. Wright, *supra*, at 134 & nn. 40–41. Having chosen deliberately and carefully to avoid DOHSA, are plaintiffs compelled to have their case within it and to sue only in the federal court? The question is not rhetorical; the answer is not perfectly clear. For cases with which today's decision may be inconsistent, see *Jennings* v. *Goodyear Aircraft Corp.*, 227 F.Supp. 246, 247–48 (D. Del.1964); *Wilson* v. *Transocean Airlines*, 121 F.Supp. 85 (N.D. Cal.1954). This court concludes, however, after more brooding than it is useful to retrace, that plaintiffs may not be so confined.

Actions for wrongful death were known under the laws of many places before DOHSA. Admiralty courts, even before the rule of *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), was ended by *Moragne* v. *States Marine Lines, Inc.*, 398 U.S. 375, 90 S. Ct. 1772, 26 L.Ed.2d 339 (1970), would enforce such claims arising under the law of a pertinent domicile or flag. E. g., *La Bourgogne*, 210 U.S. 95, 138, 28 S.Ct. 664, 52 L.Ed. 973 (1908). And the courts of the states, exercising their general and presumptively sufficient jurisdiction, had a similar power. See the learning outlined by Judge Dooling in *Safir* v. *Compagnie Générale Transatlantique*, 241 F.Supp. 501, 506–08 (E.D.N.Y. 1965). While there is room for a contrary view, this court is unpersuaded that DOHSA was meant, or should be read, to wipe out or appropriate all cases of that nature whenever the culminating event—the crash or the death or both—happens in the waters more than a marine league from our shores.

It is certainly not patent that the happening of a disaster in a place on the high seas, regardless of the actions and other causes from which it followed, decisively attracts DOHSA. *Rodrigue* v. *Aetna Cas. & Sur. Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), *rev'g Dore* v. *Link Belt Co.*, 391 F.2d 671 (5th Cir. 1968). Depending upon the circumstances and the geography, a planted time bomb could give rise under fairly applicable law to actions sounding in tort, contract, or other species of delict, all lacking anything resembling "a significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc.* v. *Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). All kinds of imaginable cases, including this one, which awaits concrete factual development, could have as their last, and very possibly adventitious, episode a fatal crash into the seas. It does not follow that every such finale makes the matter a case under DOHSA.

Literally at least, the Act lends itself to a quite different reading. It speaks, 46 U.S.C. § 761, of a death "caused by

**12**

wrongful act, neglect, or default *occurring on the high seas* * * *." (Emphasis added.) Granting this may oversimplify problems of some complexity, we are entitled to note that a bomb planted in an airport does not answer to the quoted description. See *Sea-Land Services, Inc.* v. *Gaudet*, 414 U.S. 573, 600 & n. 5, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (Powell, J., dissenting). The question is at least open enough to make unpersuasive the claim that every death in a disaster at sea, whatever led to it, is DOHSA business.

We may assume that the Congress had the *power* to sweep all such matters, if brought in any American forum, within the exclusive jurisdiction created by DOHSA. But it would take a demonstration not yet known to this court to persuade that there was any purpose to make such a drastic change in 1920. We are reminded from time to time of our basic duty to avoid exuberance in measuring the specific bounds of federal judicial authority at the expense of the states' tribunals. *Executive Jet Aviation* v. *Cleveland, supra,* 409 U.S. at 272–73, 93 S.Ct. 493. The admonition weighs against the heady submission offered by defendants.

3. In acknowledging the presumptive jurisdiction of the state court in a case not pleaded under DOHSA, we stop short of New York's own position that its courts may take jurisdiction of claims brought exclusively under that Act, being bound only to obey its substantive provisions. *Ledet* v. *United Aircraft Corp.,* 10 N.Y.2d 258, 219 N.Y. S.2d 245, 176 N.E.2d 820 (1961). It is enough for present purposes to hold, as this court does, that New York's courts of general jurisdiction would seem to have power to adjudicate claims of the kind involved here in suits which *do not* rest upon DOHSA.

 4. There is another essentially similar, perhaps parallel, route to the result reached herein. There is weighty precedent for the proposition that a removal petition claiming federal preemption of the subject matter is insufficient

because "[f]ederal preemption is a matter of defense to a state law claim, and not a ground for removal." *Washington* v. *American League,* 460 F.2d 654, 660 (9th Cir. 1972) (antitrust laws). To the same effect, see *Bailey* v. *Logan Sq. Typo., Inc.,* 441 F.2d 47, 51–52 (7th Cir. 1971) (copyright, trademark, and unfair competition laws).

 5. Acknowledging again that our result is not unattended by doubts, the court recalls "the basic principle that if the right to remove is doubtful, the case should be remanded." *Lance Int'l, Inc.* v. *Aetna Cas. & Sur. Co.,* 264 F.Supp. 349, 356 (S.D.N.Y. 1967). See also *Jody Fair, Inc.* v. *Dubinsky,* 225 F. Supp. 695, 696 (S.D.N.Y. 1964); C. Wright, *supra,* § 41, at 147–48.

The motion to remand is granted. Defendants' cross-motion is denied. So ordered.