NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al., Plaintiffs,

v.

The CITY OF NEW YORK, et
al., Defendants.

Nos. 81 Civ. 6203 (KTD), 81 Civ. 6312
(KTD) and 81 Civ. 6313 (KTD).

United States District Court,
S. D. New York.

Dec. 7, 1981.

Terris & Sunderland, Washington, D. C.,
Fried, Frank, Harris, Shriver & Jacobson,
New York City, for plaintiffs; Bruce J.
Terris, James M. Hecker, Washington, D.

C., Joel S. Silber, Robin A. Fleischner, New York City, of counsel.

Lanigan, O'Connel, Jacobs & Chazin, Basking Ridge, N. J., Antonio Rossmann, San Francisco, Cal., for plaintiff Actors' Equity Association; William W. Lanigan, Carl H. Rifino, Basking Ridge, N. J., of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for defendants Samuel R. Pierce, Jr. and James G. Watt; Gaines Gwathmey III, Asst. U. S. Atty., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants the City of New York, the Board of Estimate of the City of New York, Edward I. Koch, City Planning Commission of the City of New York and Community Board No. 5; Lorna Bade Goodman, Asst. Corp. Counsel, New York City, of counsel.

Weil Gotshal & Manges, New York City, for defendants Richard A. Kahan and the New York State Urban Development Corp.; Michael D. Hess, Leslie A. Conason, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, Attorneys for defendant John C. Portman, Jr.; Arnold I. Roth, Charles A. Crum, Mark C. Extein, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants New York State, et al.; Richard Liskov, Asst. Atty. Gen., New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

In this most recent case involving development of the Portman Hotel project, plaintiffs seek summary judgment on five of the claims asserted in their original federal complaint. All the summary judgment claims are based on violations of procedural requirements of either the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.* ["NHPA"], the Housing and Community Development Act, 42 U.S.C. § 5301 *et seq.* ["HCDA"] or the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ["NEPA"]. The defendants, federal and municipal officials as well as the developer Portman, move for dismissal of all eight claims pursuant to Fed.R.Civ.P. 12(b)(6). However, defendants' motions are more properly labelled as summary judgment motions and are so deemed. Fed.R.Civ.P. 12(c).[1]

## I. THE ORIGINAL FEDERAL COMPLAINT

Plaintiffs' claims on which summary judgment motions are founded will be addressed *seriatim* as they appear in the original federal complaint.

■ 1. Plaintiffs allege that the HCDA prohibits Mayor Koch, New York City, the Board of Estimate or Defendant Portman from incurring demolition costs before defendants comply with all the necessary procedural requirements for the release of federal funds.

The defendants must await preliminary approval from the Department of Housing and Urban Development ["HUD"] on the City's request for release of funds before funds can be committed. 42 U.S.C. § 5304(h)(2); 24 C.F.R. § 570.461 (1981). Defendant Portman risks forfeiture of reimbursement if the Urban Development Action Grant ["UDAG"] is not later approved, but does not risk any violation of the HCDA. Assistant United States Attorney Gaines Gwathmey III represented at a hearing held before me on December 1, 1981, that preliminary approval had been secured from HUD on that date. Accordingly, Portman now has plenary authority to incur costs for project activities. *See* 24 C.F.R. § 570.462 (1981). The assertion in the City's UDAG application (Plaintiffs' Exhibit 9, p. 65) that demolition is to be totally funded through the UDAG does not

---

1. A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and also the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56.

warrant a change in result. Defendants' motion for summary judgment of claim one is granted.

■ 2. Plaintiffs allege that the municipal defendants' failure to require the Board of Estimate of the City of New York to consider the Final Environmental Impact Statement ["FEIS"] and then to issue written findings based on the FEIS violates the NEPA. The plaintiffs further contend that demolition is prohibited until the Board of Estimate complies with the above NEPA procedures. Pursuant to the HCDA, the municipal defendants, upon seeking federal assistance in the form of a UDAG, became federal agencies subject to federal NEPA jurisdiction and regulations promulgated under NEPA by the Council on Environmental Quality, and Mayor Koch as the certifying officer assumes the status of a federal official. 42 U.S.C. § 5304(h)(3)(D). The regulations and statutes emphasize the importance of a FEIS in the evaluation and review of any project, but do not mandate consideration of the statement prior to preliminary agency action.[2] *Cf. Mobil Oil Corp. v. FTC*, 562 F.2d 170 (2d Cir. 1977) (FEIS not required in preliminary discovery stage).

Plaintiffs rely on state and local authority to assert the necessity of a Board of Estimate review and written finding based on the FEIS before the Portman project can go forward. However, the Uniform Land Use Review Procedure, Section 197–c of the New York City Charter ["ULURP"] requires final approval by the Board of Estimate only when "housing" and "urban

renewal" projects are involved, and not a proposed hotel complex. The past actions of the Board of Estimate approving preliminary matters of leaseback and sale arrangements, modifications in accordance with the zoning laws and authorization to apply for UDAG funds neither binds the Board of Estimate nor the municipal defendants to later referrals to the Board of Estimate for final decisions.

Mayoral Executive Order No. 91, issued August 24, 1977, requires Board of Estimate final approval after consideration of the FEIS only when defendants are subject to ULURP. As stated herein, a hotel-theater complex does not qualify as an "urban renewal" or "housing" project.[3]

Plaintiffs argue that the Council on Environmental Quality regulations require the Board of Estimate, the approving agency on the UDAG application, to give final approval on the project through a written record of decision. 24 C.F.R. § 58.11 (1980). However, implicit in the designation of an "approving body" is a "governing body" empowered to make final decisions. *See* 24 C.F.R. § 570.458(c)(16) (1981). Mayor Koch, the Chief Executive Officer of New York City, is therefore responsible for final determinations issued regarding the Portman project.

Plaintiffs are unable to cite any other local statutory authority mandating Board of Estimate review. While the significance of the FEIS cannot be denigrated, *Andrus v. Sierra Club*, 442 U.S. 347, 99 S.Ct. 2335, 60 L.Ed.2d 943 (1979), the approval of the project by both the Mayor and the UDC

---

**2.** By analogy, the Second Circuit stated in a case also arising out of this Portman project that HUD need not consider an FEIS before issuing preliminary approval. *New Yorkers to Preserve the Theater District v. Landrieu*, 661 F.2d 910 (2d Cir. 1981).

Plaintiffs continually confuse the distinction between preliminary decisions leading to final approval of an overall project, and preliminary decisions which themselves must be made final. The Board of Estimate actions are in the former category.

**3.** Plaintiffs futilely attempt to prove otherwise. The construction of a project in an area surrounded by "urban blight" does not render this

project one of urban renewal. Urban renewal as elsewhere defined refers to:

> ... [a] program established, conducted and planned by a municipality for the redevelopment, through clearance, replanning, reconstruction, rehabilitation, and concentrated code enforcement, or a combination of these and other methods, of substandard and insanitary areas of such municipalities ....

N.Y.Gen.Mun.Law § 502(3) (McKinney).

The contradiction in the plaintiffs' position that the Theater District should be preserved on the one hand and that it constitutes "urban blight" on the other is self-evident.

after review of the FEIS is sufficient to satisfy both federal and state law. Defendants' motion for summary judgment on claim two is granted.

■ 3. Plaintiffs contend that the Helen Hayes Theater cannot be demolished pursuant to the Memorandum of Agreement ["MOA"] (Defendants' Exhibit N, FEIS, pp. F4–8) entered into under the NEPA until (1) mitigating measures contained in the "proposal" appended to the MOA are satisfied and (2) the Portman project actually goes forward. As a UDAG applicant, the municipal defendants are obligated to abide by NHPA and its regulations, 24 C.F.R. §§ 58.1(a)(3)(i), 58.5(a)(2), 58.24 (1980), which in turn requires obedience to the MOA executed by the Advisory Council on Historic Preservation ["ACHP"]. 36 C.F.R. § 800.4 (1980). The first requirement for demolition under the MOA has been met. However, plaintiffs unreasonably incorporate a second condition into the MOA. Plaintiffs contend that the eligibility of the Helen Hayes Theater for the National Register renders demolition permissible under the MOA only when it is absolutely certain that the project will be completed.

It is true that no UDAG funds can be released until New York City presents to HUD evidence of legally binding commitments from all Portman project participants. 24 C.F.R. § 570.461(b) (1981). However, demolition may commence once HUD has issued the required environmental releases. 24 C.F.R. § 570.426(a)(3) (1981). Any costs incurred in demolition "will not be reimbursed if the legally binding committments are not approved." 24 C.F.R. 461(c) (1981). The execution of the Helen Hayes MOA together with the HUD preliminary approval permit demolition to begin in full accord with NEPA and HCDA. Defendants' summary judgment motion on claim four of the original complaint is granted.

■ 4. Plaintiffs assert that the municipal defendants violated the NHPA by failing to request that the Secretary of the Interior determine the eligibility of the Morosco Theater and the Theater District for inclusion on the National Register of Historic Places.[4] This claim is partially mooted by the subsequent determination that the Morosco is eligible for inclusion on the National Register. The question still remains as to whether the municipal defendants violated the NHPA and the ACHP regulations by excluding the "Theater District" from ACHP review. The regulations provide that the agency, in this case the City, in conjunction with the State Historic Preservation Officer ["SHPO"], apply for an eligibility determination from the Secretary of the Interior when either the City or the SHPO find the property to possess the eligible criteria or a question exists as to eligibility. *See* 36 C.F.R. § 800.4(a)(3) (1980). In 1981, an extensive study was conducted by Soil Systems, Inc. (Defendants' Exhibit C), experts in environmental consulting, on behalf of the City to thoroughly evaluate the proposed Portman site in keeping with the National Register criteria. The study reports on the Theater District:

> Careful consideration of the National Register guidelines concerning definition of an Historic District indicate that the criteria cannot be met by existing conditions.

(Defendants' Exhibit C, p. 61).

The City and the SHPO agreed that no grounds existed for consideration of National Register eligibility for the Theater District. This good faith decision, based in part on the decision of expert consultants, is in complete compliance with the ACHP regulations. Plaintiffs' challenge to the defendants' alleged desultory decision to exclude the Theater District from consideration for the National Register does not negate the City's compliance. Summary judgment on claim five of the complaint is granted.

4. The Morosco is included in the proposed project site and the "Theater District" is comprised of the project site as well as nearby areas.

■ 5. The plaintiffs' final motion for summary judgment, based on claim six of their original complaint, also charges the municipal defendants with violations in connection with the FEIS. This claim arises under the HCDA and challenges the City's failure to identify the Morosco Theater and the "Theater District" as possible candidates for the National Register in their request for UDAG funds. In 1980, the HCDA was amended to require that all UDAG applications contain:

> ... (B) an identification of all other properties, if any, which will be affected by such project and which, as determined by the *applicant,* may meet the criteria established by the Secretary of the Interior for inclusion on such Register, together with documentation relating to the inclusion of such properties on the Register; ...

(emphasis added)

42 U.S.C. § 5318(c)(7) (Supp. IV 1980). This statute places the burden of identification on the applicant. As discussed *supra,* the City's and the SHPO determination that the Theater District would not be eligible was founded on extensive research and studied consideration. Accordingly, defendants' motion for summary judgment of claim six is granted.[5]

■ Plaintiffs have not moved for summary judgment or preliminary relief on their remaining two claims. There remains, however, defendants' motions to dismiss these claims. The first claim challenges the adequacy of the FEIS. The FEIS is alleged deficient in its discussion of alternative sites which would encompass rather than destroy the Helen Hayes and Morosco Theaters. Plaintiffs' argument in support of a declaratory judgment that the FEIS is invalid ignores not only the FEIS itself, but also the statutes governing the compilation of a FEIS.

The FEIS and the EIS are required under state and local law to include the following: "An EIS should assemble relevant and ma-terial facts upon which the decision is to be made, should identify the essential issues to be decided, should evaluate all reasonable alternatives and, on the basis of these, should make recommendations." 6 N.Y.C.R.R. § 617.14(b). An EIS shall contain "a discussion of alternatives," Executive Order No. 91 § 9(d) (August 24, 1977) along with "the comparable impacts and effects of such alternatives." 21 N.Y.C.R.R. § 4200.-10(d)(4). Federal law also provides for alternative designs to be considered in an EIS. 42 U.S.C. § 4332(2)(c)(iii). I am satisfied that the FEIS complies with both the federal and the local standards. Chapter 6 of the FEIS is devoted entirely to alternatives to the proposed Portman project. The plaintiffs strenuously proffer an alternative design recently conceived by Mr. Pomeroy. (See Affidavits of Mr. Pomeroy). The FEIS hardly fails as inadequate for failing to consider the Pomeroy plan which was first formulated in connection with this litigation and presented to defendants on September 11, 1981. (Memorandum of Law in Further Support of Defendants City, UDC and Portman's Motions to Dismiss and in Reply to Plaintiffs' Motions for Summary Judgment, p. 7). Every feasible alternative need not be considered as long as the EIS sufficiently presents the alternatives needed to "permit a reasoned choice." *Monroe County Conservation Council, Inc. v. Adams,* 566 F.2d 419, 425 (2d Cir. 1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) *quoting Brooks v. Coleman,* 518 F.2d 17, 19 (9th Cir. 1975). The FEIS presents an in-depth analysis of six alternative sites. This analysis satisfies the requirements of both federal and state law. If this were not the case, claimants could challenge the project up until the time it is completed. Accordingly, defendants' motion to dismiss is granted.

The last remaining federal claim of the original complaint "raises questions of state and local law and procedure which have been incorporated by reference into federal

---

5. The parties agree that claim eight of plaintiffs' federal complaint is mooted by the No-vember 5, 1981 stipulation.

statutes and which are currently being litigated in a parallel action in state court." (Memorandum of Points and Authorities in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, p. 2 n. 2). On October 14, 1981 the defendants removed all state claims to this court. Plaintiffs subsequently moved to remand the state claims to state court alleging improper removal. My decision to grant plaintiffs' motion to remand the two state cases (81 Civ. 6312, 81 Civ. 6313) discussed below, and judicial economy necessitates the placing of this federal claim on the suspense calendar until the state litigation is resolved.[6]

## II. REMAND TO STATE COURT

 Defendants claim this court has original jurisdiction to entertain the state claims as ones "arising under" federal law pursuant to 28 U.S.C. § 1331. (Verified Petition for Removal, p. 2). This would make defendants' state case removable under 28 U.S.C. § 1441(a). However, plaintiffs' state court actions are premised solely on New York State and local laws and regulations. (Order to Show Cause for Remand, Exhibits A & B).[7] Defendants apparently contend that plaintiffs' state claims are incorporated into NEPA and therefore "arise under" federal law. Even if plaintiffs' state court claims involve questions of federal and state law, plaintiffs are free to assert only their state claims and avoid removal. *City of Winston-Salem v. Chauffeurs, Teamsters & Helpers Local Union*, 470 F.Supp. 442, 447 (M.D.N.C.1979); 1A Moore's *Federal Practice* ¶ 0.160 at p. 185. Any federal defenses defendants may raise are not sufficient to warrant removal. *Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918); *Lowe v. Trans World Airlines*, 396 F.Supp. 9, 11 (S.D.N.Y.1975). Accordingly,

---

**6.** Plaintiffs alternatively move for summary judgment or a temporary restraining order and preliminary injunction. My resolution of the summary judgment motions moots plaintiffs other requests.

**7.** Exhibit A, the summons and complaint in the plenary action, and Exhibit B, the Verified Peti-

I must reconsider my initial decision of October 16, 1981 denying removal, and hereby grant plaintiffs' motion to remand.

## III. AMENDED COMPLAINT

On November 24, 1981, by Order to Show Cause, plaintiffs, in yet another attempt to avoid demolition, sought leave to amend their state complaint, and add defendants and claims to their federal complaint. Additionally, plaintiffs requested a temporary restraining order and a preliminary injunction on these additional claims. My decision to remand the state cases moots plaintiffs' request for amendment. The federal complaint is amendable as of right pursuant to Fed.R.Civ.P. 15(a), as no "responsive pleading" has been served. Defendants' motions to dismiss are not considered responsive pleadings. 3 Moore's *Federal Practice* ¶ 15.07[2] at p. 15–46. Plaintiffs must seek leave of this court to add the following additional defendants: the Advisory Council on Historic Preservation, Robert Garvey, the Executive Director of the Council, and Alexander Aldridge, the Chairman of the Council. Fed.R.Civ.P. 21. In light of the fact that of plaintiffs' five new federal claims, four are directed at the proposed defendants, leave to amend is granted. I must therefore consider the government's motion to dismiss. In·so doing, I cannot ignore certain facts admitted on argument by the plaintiffs.

On October 27, 1981, all parties entered into a stipulation providing for appeal to the Secretary of the Interior for inclusion of the Morosco Theater, the Guild Embassy 5, the Bijou Theater and the Picadilly Hotel and the National Register. On November 17, 1981, the Secretary of the Interior, after considering plaintiffs' papers in support and defendants' papers in opposition, declared the Morosco Theater eligible. The stipula-

---

tion in the Article 78 proceeding, raise issues arising under the N.Y.Envir.Conserv.Law, State Environmental Quality Review Act, Section 8–0101 *et seq.* (McKinney) ["SEQRA"], and the Urban Development Corporation Act, Unconsol.Laws, § 6251 *et seq.* ["UDCA"]. No federal law violations are alleged.

tion entered into among the parties provided that:

6. In the event the Secretary or his delegate determines that some or all of the disputed properties are eligible for inclusion in the National Register, the parties agree not to object to an expedited consideration of this matter by the Advisory Council on Historic Preservation pursuant to 36 C.F.R. Part 800 (1980).

The Council is delegated "a reasonable opportunity" to comment on the expenditure of federal funds in connection with any undertaking involving properties deemed eligible for inclusion in the National Register. 16 U.S.C. § 470; 36 C.F.R. § 800.1 (1980). The regulations promulgated by the Council provide that if all consulting parties agree (the agency official, the SHPO and the Executive Director of the Council) "upon a feasible and prudent alternative to avoid or satisfactorily mitigate the adverse effects" 36 C.F.R. § 800.6(b)(5) (1980) of the project on eligible properties, a MOA shall issue "that details the actions agreed upon by the consulting parties to be taken to avoid, satisfactorily mitigate, or accept the adverse effects on the property." 36 C.F.R. § 800.6(c) (1980).

■ Plaintiffs allege that the expedited appeal in the instant case violated the NEPA and 36 C.F.R. Part 800. The four claims relating to the Council allege, in the order they are presented in the amended complaint: (1) the allegedly "hastily" executed MOA allowing demolition of the Morosco disregarded the Council's duty to reasonably comment on the project and its effects on the Morosco; (2) the White House staff and the Secretary of the Interior exercised undue political pressure on the Council to execute an MOA allowing for demolition of the Morosco, impinging upon the Council's existence as an independent agency; (3) the MOA, in providing for the City to consider alternatives to a Morosco demolition, delegated authority vested in the Council and further derogated its status

as an independent agency; and (4) the MOA executed by Mr. Garvey is arbitrary and capricious in violation of Section 706(2)(A) of the Administrative Procedure Act.

The first claim is entirely inconsistent with the stipulation agreed to and signed by the plaintiffs providing for an expedited appeal. All procedures provided for in 36 C.F.R. Part 800 were followed. The plaintiffs were allowed an opportunity to present the alternative design of Mr. Pomeroy to the Council. Mr. Garvey, who executed the Morosco MOA attests that the agreement reached was based on "recommendations and information received from my staff, the material and data submitted to the Council by the participants in the consulting process and my personal involvement in the consultation process." (Affidavit of Robert Garvey, Jr.). It is worth noting that in August, 1978, the Council was consulted on the Portman project in regard to the demolition of the Helen Hayes Theater. The consultation lasted two months, included a detailed on-site inspection and resulted in an MOA allowing demolition. The Council was familiar with the Portman project when its advice was again sought in November, 1981. The expedited consideration presents no basis for violations of 36 C.F.R. Part 800. This claim is dismissed.

■ The second claim asserts that the Council's obedience to the parties' stipulation allowing for an expedited appeal, in conjunction with calls from members of the White House staff and the Secretary of the Interior[8] clearly establishes that the Council, Mr. Aldridge and Mr. Garvey "bowed to the demands of the White House and Secretary of the Interior." (Plaintiffs' Memorandum in Support of a Preliminary Injunction and Temporary Restraining Order Based on Claims in Their Amended Federal Complaint and Amended and Supplemented State Complaint, p. 32). Defendants readily admit that calls from the White House

---

**8.** Plaintiffs fail to mention that the Secretary of the Interior is a member of the Council. 36 C.F.R. § 800.1 (1980).

staff were made to emphasize the need for expeditious consideration. Plaintiffs have shown nothing other than pure speculation that these calls were either coercive or threatening. No evidence is presented to suggest that the Council's determination was based on either extraneous considerations or irrelevant factors. *See Sierra Club v. Costle,* 657 F.2d 298, 409 (D.C.Cir.1981).

▮ Thus this claim, while it appears to be on extremely tenuous footing, still presents a possible question of fact. Defendants' motion to dismiss must be denied. The facts alleged, however, are not sufficient to justify a preliminary injunction or a temporary restraining order. The defendants refute plaintiffs' claim of political pressure. An evidentiary hearing is therefore required before a preliminary injunction can be granted. *SEC v. Frank,* 388 F.2d 486, 491 (2d Cir. 1968). The plaintiffs were given the opportunity for an evidentiary hearing—an opportunity they rejected. The plaintiffs indeed refused to even name the person who supposedly suggested that any such pressure was exerted. For the reasons stated herein, I am constrained to deny plaintiffs' motion for preliminary injunction.

▮ Plaintiffs' next claim disputes the Council's authority to allow the City to determine if feasible alternatives exist to demolition of the Morosco. The consulting parties agreed, as required by 36 C.F.R. § 800.6(b) that "no feasible or prudent alternatives" [9] to avoid demolition exist. The fifteen days granted in the MOA for the City to re-examine the design alternative presented to the Council is one final attempt to avoid demolition of the historically relevant Morosco. It does not amount to a diminution of the Council's independent agency status nor does it violate any regulations. This claim is dismissed.

▮ The final claim against the Council alleges that the MOA is arbitrary, capricious and an abuse of discretion as prohibited by the Administrative Procedure Act [10] ["APA"]. Serious questions exist as to the Council's status as an "agency" for purposes for this statute. My determination that the MOA is valid on its face obviates the need to determine justiciability under the APA.

Plaintiffs cite political pressures from the White House, the fifteen day period during which the City can consider the alternative designs and the Council's failure to consider relevant factors as ample justification for this court to set aside the MOA. I have already ruled herein that the fifteen day period alloted the City to consider other alternatives is in accord with 36 C.F.R. Part 800 (1980). There remains plaintiffs' claim that the executive pressure influenced the Council to make its decision and not the evidence presented by all parties. Mr. King and Ms. Goodman state that the Council has been familiar with the Portman project since 1978 and that the plaintiffs participated in the recent meetings held with the Council to consider alternatives to demolishing the Morosco. (Affidavits of Lorna Bade Goodman and Thomas King). It appears that facially the Council's decision is based on relevant factors and is not a clear error of judgment. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While I am not at this time dismissing this claim since plaintiffs eventually must have the opportunity of submitting proof, it is clearly not a basis for a temporary restraining order or for a preliminary injunction.

▮ The sole claim remaining in the amended complaint asserts the invalidity of the FEIS. Plaintiffs argue that because the initial FEIS found the Morosco ineligi-

---

**9.** Morosco MOA, Exhibit 9 appended to November 30, 1981 Affidavit of Lorna Bade Goodman.

**10.** Section 706 provides in pertinent part:
 The reviewing court shall—
 (1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

ble for the National Register, the subsequent determination by the Secretary of the Interior that the Morosco is eligible requires a supplemental FEIS. I have already ruled on the adequacy of the FEIS under both federal and state law.[11] The issue remaining for resolution is whether the Interior Department's decision is considered "significant new circumstances or information" warranting the preparation of a FEIS supplement. 40 C.F.R. § 1502.-9(c)(ii) (1981). The Second Circuit recognizes the appropriateness of a supplemental FEIS when the initial FEIS is inadequate. *Natural Resources Defense Council, Inc. v. Callaway*, 524 F.2d 79, 91 (2d Cir. 1975). In the instant case, however, the FEIS is adequate. A supplementation is not required every time that new information becomes available. *Warm Springs Dam Task Force v. Gribble*, 621 F.2d 1017, 1024 (9th Cir. 1980). The City is entitled to evaluate the new information and determine if a supplement is warranted. *Ibid.* In this instance, the City contends that the Morosco determination has no environmental impact on the project. The MOA still allows for the destruction of the theater. The designation of the Morosco as eligible for the National Register does not qualify as significant information mandating the preparation of a supplemental FEIS. This claim is dismissed.

In sum, defendants' motions for summary judgment on claims one, two, four, five, and six of plaintiffs' federal complaint are granted; claim three is dismissed; claim seven is placed on the suspense calendar; claim eight is moot. Plaintiffs' motion to add defendants to the amended complaint is granted. Defendants' motions to dismiss the amended complaint is granted in part and denied in part. A discovery schedule as to the remaining claims is to be worked out at a pre-trial conference to be held on December 14, 1981 at 4:15 p. m. in Courtroom 443 of this Court.

SO ORDERED.

11. Plaintiffs strenuously argue that the Secretary's decision regarding the Morosco invalidates the FEIS *per se.* This argument fails to recognize the serious consideration given by the City, the SHPO and expert consultants to the Morosco prior to their decision not to request eligibility.