## NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,

v.

## The CITY OF NEW YORK, et al., Defendants.

### No. 81 Civ. 6203 (KTD).

United States District Court, S. D. New York.

Feb. 11, 1982.

Terris & Sunderland, Washington, D. C., Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiffs; Bruce J. Terris, Philip G. Sunderland, James M. Hecker, Robert S. Blacher, Washington, D. C., William Josephson, Joel S. Silber, Robin A. Fleischner, New York City, of counsel.

Lanigan, O'Connel, Jacobs & Chazin, Basking Ridge, N. J., Antonio Rossman, San Francisco, Cal., for plaintiff Actors' Equity Ass'n; William W. Lanigan, Carl H. Rifino, Basking Ridge, N. J., of counsel.

John S. Martin, Jr., U. S. Atty. for the S. D. New York, Samuel R. Pierce, Jr. and James G. Watt, New York City, for defendants; Gaines Gwathmey, III, Asst. U. S. Atty., New York City, of counsel.

Frederick A. O. Schwartz, Corp. Counsel, New York City, for defendants the City of New York, the Bd. of Estimate of the City of New York, Edward I. Koch, City Planning Commission of the City of New York and Community Bd. No. 5; Lorna Bade Goodman, Asst. Corp. Counsel, New York City, of counsel.

Weil Gotshal & Manges, New York City, for defendants Richard A. Kahan and the New York State Urban Development Corp.; Michael D. Hess, Leslie A. Conason, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant John C. Portman, Jr.; Arnold I. Roth, Charles A. Crum, Mark C. Extein, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

One unresolved question remains in this federal litigation surrounding construction of the Portman Hotel project in the Times Square Area of New York City: did the White House exert undue political pressure on the Advisory Council of Historic Preservation to execute expeditiously a Memorandum of Agreement ["MOA"] in favor of the defendants? I will assume familiarity with my December 7, 1981 opinion, 528 F.Supp. 1245, where all other issues were resolved.[1]

## BACKGROUND

In an effort to finally determine the status of all properties on the proposed Portman Hotel site, the parties entered into a stipulation which provided in pertinent part:

> 6. In the event the Secretary or his delegate determines that some or all of the disputed properties are eligible for inclusion in the National Register the parties agree not to object to an *expedited consideration* of this matter by the Advisory Council on Historic Preservation pursuant to 36 C.F.R. Part 800 (1980).
> (emphasis added)

Appendix to Plaintiffs' Exhibit 8. The Morosco Theater was deemed eligible for inclusion in the National Register on November 17, 1981 and the agreed upon expedited appeal ensued. A MOA was signed by Mr. Aldrich, the Chairman of the Advisory Council, on Saturday, November 21, 1981 recommending demolition of the Morosco Theater and allowing a fifteen day

---

1. Aside from this political pressure claim, I also did not dismiss claim 8 of plaintiffs' original complaint was placed on the suspense calendar to await state resolution. The New York Supreme Court dismissed plaintiffs' claims and that decision is now on appeal. *See* Judge Richard Lee Price's decision Index No. 22199/81, Supreme Court, New York Court entered January 7, 1982 and his Order and Judgment entered January 14, 1982. This claim which presents issues of state and local law will remain on suspense until a final judgment is issued by the New York appellate courts.

period for New York City to consider alternatives to demolition. Government Exhibit 1. Plaintiffs allege that the dispatch accorded the Morosco Theater determination resulted from political pressure exerted by Mr. Lyn Nofziger, who at the time served as a high-level aide to President Reagan.

The facts alleged by plaintiffs were sufficient to defeat defendants' motion to dismiss this particular claim. *See* December 7, 1981 op. at pp. 19–20. A temporary restraining order was later entered enjoining demolition of the Helen Hayes and the Morosco Theaters pursuant to an order of the Court of Appeals for the Second Circuit which remanded the case. In the interest of expedition and at the request of the parties, the January 21, 1982 hearing on plaintiff's motion for a preliminary injunction was consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). The temporary restraining order was extended pending this court's final judgment.

## DISCUSSION

The January 21 trial accorded plaintiffs an opportunity to substantiate their allegations of White House pressure. To succeed on this claim, plaintiffs had to prove that the Advisory Council's Morosco MOA was directly influenced by political pressure from the White House and was not the product of a reasoned and independent Council analysis. This legal standard can be gleaned from three principal cases: *Citizens to Preserve Overton Park, Inc., et al. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *D.C. Federation of Civic Associations v. Volpe*, 459 F.2d 1231 (D.C.Cir. 1971), *cert. denied*, 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972) and *Sierra Club v. Costle*, 657 F.2d 298 (D.C.Cir.1981).[2]

In *Overton Park*, the Supreme Court was presented with a challenge to Transportation Secretary Volpe's ruling that no feasible alternatives were available to prevent construction of a highway through a public park in Memphis, Tennessee. In reviewing Secretary Volpe's decision, the Court considered "whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." 401 U.S. at 416, 91 S.Ct. at 823. The inadequate administrative record, however, precluded the Court from reaching a decision and the case was remanded to District Court for compilation and evaluation of the administrative proceedings in light of the above standard.

Transportation Secretary Volpe's ruling in another case was challenged and eventually overturned in *D.C. Federation* after testimony from Mr. Volpe himself revealed that his decision was not based solely on the merits. 459 F.2d at 1246. The court found "that the repeated and public threats by a few congressional voices did have an impact on the Secretary's decision." *Id.* at 1245. In *Sierra Club*, the Circuit Court relied upon *D.C. Federation* and set forth the requirements which must be met before an administrative decision is judicially overturned on the grounds of political pressure:

> First, the content of the pressure upon the Secretary is designed to force him to decide upon factors not made relevant by Congress in the applicable statute ....
> Second, the Secretary's determination must be affected by those extraneous considerations.

657 F.2d at 409. The *Sierra Club* court followed this legal standard and determined that Senator Byrd's "strong" expression of his views on coal emission standards did not place extraneous pressure on the Environmental Protection Agency. *Id.* Allegations of the Senator's threats were unsubstantiated. The court reinforced the freedom of congressmen as well as members of the Executive Branch to voice their opinions. *Id.* at 405, 409.

The threats and extraneous pressure alleged by plaintiffs in the instant case are equally unsupported. Plaintiffs' trial memorandum is a valiant but unsuccessful at-

---

**2.** The federal defendant also contends, as it has done previously, that plaintiffs' claim fails to satisfy the justiciability requirements of Article III. Furthermore, this defendant rejects the Council's status as an "agency" within the meaning of the Administrative Procedure Act. Plaintiffs failure to prove their claims of political pressure is in itself grounds to dismiss and obviates any need to resolve these jurisdictional questions.

tempt to do so, but even with its wonderous sophistry fails to sustain the burden of proof. The following facts are uncontroverted: Mr. Artiano, a lawyer representing the Marriott Corporation, met with his personal friend Lyn Nofziger on November 19, 1981 for help in securing an expeditious ruling from the Advisory Council vis-a-vis the Morosco Theater. Artiano Deposition at 11. Mr. Nofziger, unaware of the Morosco Theater litigation and the workings of the Advisory Council called upon his personal friend Joe Canzeri to contact Sam Aldrich, the Chairman of the Council. Nofziger Deposition at 5–7; Canzeri Deposition at 6; Aldrich Deposition at 51. On November 19, 1981, Mr. Aldrich, Robert Garvey and Lyn Nofziger had a three-way conference call prompted by Canzeri's call to Aldrich. It is the substance of this call and its repercussions which are disputed.

Plaintiffs contend that Mr. Nofziger told Mr. Aldrich and Mr. Garvey to "roll over in this matter, or . . . the Council would be put out of existence . . . ." Tannenbaum Deposition at 15. Plaintiffs intimate through the affidavit and deposition testimony of Thomas King, the Advisory Council's Director of the Office of Cultural Resource Preservation, Jordan Tannenbaum, the Advisory Council's Chief of the Eastern Division of Project Review and Jack Goldstein, an Advisory Council employee, that Garvey and Aldrich were given specific instructions from the White House to execute a MOA in favor of demolition by 5:00 p. m. November 20, 1981 or risk extinction of the Council.

Plaintiffs' argument rests solely on unfounded speculation. Mr. King, who supposedly confirmed to both Tannenbaum and Goldstein the alleged rumor that the White House threatened to abolish the Council if it did not succumb to the White House interest, was not a party to the conversation between Messrs. Nofziger, Garvey and Aldrich. King Deposition at 101–02. Furthermore, Mr. King was told by Robert Garvey that Nofziger wanted the Council to "get on with it," id. at 108, a statement consistent with defendants' argument. The "roll over" phrase used by Mr. King was the perceived threat of Mr. King and is not properly attributable to Robert Garvey, or the Nofziger conversation, but is King's "statement of what [he] understood to be the appearance of the case to many people outside the Council, and perhaps inside." Id. at 171.

If Mr. King did in fact use these words, one can perceive only the plaintive wailing of an entrenched bureaucrat fearful of losing his position suggesting evil motives for actions by his superiors. Nofziger had requested expeditious handling of the matter from Aldrich and Garvey. In turn, Garvey had told King that expedition was required. But expeditious handling of any matter is unusual for any true bureaucrat and perhaps more so for Thomas King and his staff considering that they had over 300 separate matters under consideration at the time. Whatever was in King's mind, however, is of little importance for he was not a decision maker within the Advisory Council of Historic Preservation.

The Advisory Council regulations controlling the Morosco litigation, 36 C.F.R. Part 800 (1980), provide that Mr. Garvey, as Executive Director, and Mr. Aldrich, as Chairman, are the only members of the Council who can be signatories of a MOA. 36 C.F.R. § 800.6(c) (1980). The depositions and in court testimony of Mr. Garvey, Mr. Aldrich and Mr. Nofziger[3] confirm defendants' position that no real or imagined political pressure or threat forced the Council to execute a pro-demolition MOA.[4] Garvey Deposition at 151; Aldrich Deposition at 64, 81; Nofziger Deposition at 20; Trial Transcript at pp. 58, 75.

The evidence presents a thorough and reasoned consideration of the Morosco Theater by the Advisory Council devoid of extraneous influences: (i) close to 95 percent of all cases presented to the Council result

---

3. Mr. Nofziger was deposed by the plaintiffs but did not appear as a witness on January 21.

4. Mr. Canzeri's follow up phone call to Chairman Aldrich to confirm that Aldrich and Nofziger were in contact is not abnormal and is not evidence of undue pressure. Canzeri Deposition at 9.

in a MOA. Aldrich Deposition at 87; Trial Transcript at 67; (ii) John Cullinane, the Council's senior architect who was familiar with the Portman project, listened to the plaintiffs' presentation of the Pomeroy alternative by its creator and flatly rejected that proposal as infeasible. Trial Transcript at pp. 108–20. Mr. Cullinane, whose opinion was respected by other council members, had ample time to consider the Pomeroy proposal and was not cognizant of any White House pressure at the time he rejected Mr. Pomeroy's alternative. *Id.* at 108, 120; King Deposition at 105; (iii) Mr. Garvey examined the documents submitted by plaintiffs and validated the oral reports received from his staff recommending a MOA in favor of demolition. Garvey Deposition at 136. The Nofziger call did not influence Garvey's decision to execute a MOA. *Id.* at 151; (iv) Chairman Aldrich was presented with a complete record on the Morosco and made an independent evaluation of the record without regard to the Nofziger call when he ratified the MOA.[5] Aldrich Deposition at 109–10. Once a determination is made that no reasonable and prudent alternatives exist, the Council regulations provide for execution of a MOA, 36 C.F.R. § 800.6(b)(6) (1980); (v) the parties bestowed with authority to execute a MOA, Executive Director Garvey and Chairman Aldrich, testified as to their concern over the Office of Management and Budget's decision to halve the Council's budget but no reasonable inference can be drawn, as plaintiffs suggest, that the Office of Management and Budget's decision influenced their decision in this case. Garvey Deposition at 92;[6] (vi) the stipulation between the parties provided for expedited consideration. Mr. Nofziger's request for expedition merely reinforced the Council's desire to rule as soon as possible. Fowler Deposition at 36; Garvey Deposition at 56, 98; Aldrich Deposition at 64.[7]

Examining this evidence in light of the precedent established in *Overton Park, D.C. Federation* and *Sierra Club*, it becomes apparent that the Nofziger phone call did not constitute an extraneous factor meriting remand to the Advisory Council and rescission of the existing MOA. Plaintiffs' argument requires a finding that both Mr. Garvey and Mr. Aldrich proffered false testimony. After observing both men testify, I am convinced that their testimony was truthful and that their decision to recommend demolition of the Morosco was based solely on the merits.

This court's finding of fact that the Council decision was not tainted by White House pressure requires dismissal of plaintiffs' remaining claim. The temporary restraining order is extended for two business days from the date of this decision in order to permit plaintiffs time to make whatever application to the Court of Appeals that might be appropriate.

---

5. The procedures followed by the Advisory Council in the execution and ratification of this MOA are in full compliance with 36 C.F.R. Part 800 (1980).

6. The Council's concern over its budget was ongoing and did not originate on November 19th. Garvey Deposition at 92.

7. Congress had not passed the budget and there was no money authorized to continue the employment of the staff of the Council and that of most other government offices. This fact also prompted the Council to render its decision quickly.