**PEOPLE OF the STATE OF NEW YORK, by Robert ABRAMS, Attorney General of the State of New York, Plaintiff,**

v.

**Joseph ANDERSON and Jerry Chew, as President of the Tuscarora Warriors Council, Defendants.**

No. CIV–87–1203C.

United States District Court, W.D. New York.

Oct. 7, 1987.

Robert Abrams, Atty. Gen. of the State of N.Y. (Peter B. Sullivan, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for plaintiff.

Kavinoky & Cook (Joseph E. Zdarsky, of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

Plaintiff commenced this action on September 8, 1987, in the Supreme Court of the State of New York, Niagara County. Plaintiff sought to enjoin defendants from conducting a commercial bingo enterprise on the Niagara County Reservation of the Tuscarora Indian Nation. Defendants removed the action to this court on September 11, 1987, pursuant to 28 U.S.C. §§ 1331 and 1441.

On September 18, 1987, the court heard plaintiff's application for a temporary restraining order enjoining defendants from operating their bingo enterprise pending resolution of this action. The parties also discussed whether the action had been properly removed to this court. The court denied plaintiff's application for a temporary restraining order and ordered defendants to show cause on September 25, 1987, why the injunctive relief sought by plaintiff should not be granted. The parties were also directed to provide further briefing on the removal question, in preparation for oral argument on the order to show cause.

Oral argument was held on September 25, 1987. Presently pending before the court is plaintiff's motion to remand this action to state court (Item 8).

Plaintiff's complaint alleges that defendants' bingo enterprise, in operation on the Tuscarora Reservation since May 28, 1987, is illegal under the laws of the Tuscarora Nation. Appended to the complaint is an affidavit from Leo R. Henry, a Chief and Clerk of the Council of Chiefs of the Tuscarora Nation, which is the Nation's governing body. Chief Henry states that defendants' gambling enterprise is illegal under Tuscarora law, and notes that the Council of Chiefs enacted tribal laws on January 14, 1985, and April 1, 1987, prohibiting all forms of gambling on the Tuscarora Reservation. Chief Henry states that the Tuscarora Nation has previously sought, from the State of New York and the United States, assistance with the Nation's own informal efforts to enforce its anti-gambling law, but that the Nation has not succeeded in enforcing that law. Chief Henry concludes that defendants' bingo enterprise constitutes a repeated and persistent illegality under the laws of the Tuscarora Nation.

Plaintiff's complaint seeks to enjoin defendants' bingo enterprise pursuant to New York Executive Law § 63(12). That law states, in pertinent part:

Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts....

Plaintiff maintains in its complaint that defendants' bingo enterprise, as a repeated and persistent illegality under Tuscarora law, is actionable under New York Executive Law § 63(12). Plaintiff further states that the courts of New York State have jurisdiction over such an action, pursuant to 25 U.S.C. § 233, which gives New York courts jurisdiction over certain matters involving Indians. That section states, in pertinent part:

The courts of the State of New York under the laws of such state shall have jurisdiction in civil actions and proceedings between Indians or between one or

more Indians and any other person or persons to the same extent as the courts of the State shall have jurisdiction in other civil actions and proceedings.... [B]ut nothing herein contained shall be construed to prevent such courts from recognizing and giving effect to any tribal law or custom which may be proven to the satisfaction of such courts....

Defendants removed the action to this court pursuant to 28 U.S.C. §§ 1331 and 1441. Section 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." Federal jurisdiction on this ground is alternatively referred to as "federal question" jurisdiction. Section 1441 authorizes removal jurisdiction on this ground.

Defendants contend that plaintiff's claim inherently involves a federal question in three respects. First, defendants state that plaintiff's claim is based upon treaties between the United States and the Tuscarora Indians; second, that plaintiff's claim is based upon a federal statute, 25 U.S.C. § 133; third, that regulation of activity on Indian reservations is peculiarly a matter of federal law, and that it has been held that state regulation of bingo operations on Indian reservations is preempted by federal law. *California v. Cabazon Band of Mission Indians,* ── U.S. ──, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).

*Discussion*

■ When the propriety of removal under 28 U.S.C. § 1441 is challenged, the removing party has the burden to establish that the federal court has original jurisdiction over the matter. In determining whether there is original jurisdiction on the basis that the action is a suit "arising under," the general rule is that the federal question must appear in the complaint well pleaded, unaided by the answer or the petition for removal. Surplusage in the complaint, not relied upon by the plaintiff, should be disregarded. 1A *Moore's Federal Practice,* § 0.160[3.-1], pp. 225–26; *Gully v. First National Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ Applying this standard, I note immediately that defendants' first two grounds for removal under section 1331 must fail. Defendants' assertion that plaintiff's claim is based upon treaties between the United States and the Tuscarora Indians is derived entirely from the affidavit of Chief Leo Henry, appended to the complaint. Chief Henry's reference to the Treaty of Fort Stanwix and the Treaty of Canandaigua appears relevant only to his explanation of the basis for *prior* attempts by the Council of Chiefs to secure assistance from the United States in enforcing its anti-gambling law. There is no indication in the complaint itself that plaintiff relies upon these treaties as a basis for its claim.

Defendants' memorandum indicates that defendants no longer contend that this court has original jurisdiction over plaintiff's claim based upon plaintiff's citation in the complaint of 25 U.S.C. § 233; defendants state that "removal is not based upon plaintiff's assertion of state court jurisdiction under 25 U.S.C. § 133." (Item 7, p. 9.) Assertion of federal jurisdiction on such a basis would, of course, be problematic at best, since this federal statute exists precisely to grant jurisdiction to New York State courts over matters formerly reserved to federal court jurisdiction.

Apparently in place of the contention that removal may be based on 25 U.S.C. § 233, defendants' memorandum raises for the first time the contention that this action is removable based upon 28 U.S.C. § 1362, which states:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

Defendants note that the Tuscarora Council of Chiefs brought a recent action in federal district court under just this statute, also seeking to enjoin defendants' bingo operation. *Tuscarora Nation of Indians v. Joseph Anderson, et al.,* United

States District Court, Western District of New York, CIV–87–593E; Item 7, p. 9.[1] Defendants therefore state that this court clearly has jurisdiction over plaintiff's claim. I note, first, that plaintiff was not involved in the former action and brings this action with the support of the Tuscarora Council of Chiefs, but on behalf of the people of New York State, pursuant to New York Executive Law § 63(12).

Second, this court may, of course, potentially have jurisdiction over a claim without its being properly removable. In general, the party bringing the suit "is master to decide what law he will rely upon." *The Fair v. Kohler Die and Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). If the plaintiff has a state claim and he can also properly plead a federal claim in his complaint, then plaintiff has a choice between the state forum and federal forum, unless some federal court has exclusive federal jurisdiction over the federal claim. If the plaintiff sues in the state court and does not present a federal question in his complaint well pleaded, the defendant cannot normally remove the action as a suit "arising under." In sum, if plaintiff's claim involves both a federal ground and a state ground, plaintiff is free to ignore the federal ground and rely on the state ground, and thereby defeat removal. 1A *Moore's Federal Practice,* § 3.–2, pp. 227–232. Plaintiff does not cite 18 U.S.C. § 1362 at any point in its complaint as a basis for its claim, and the action is therefore not removable on this basis.

The real issue on this motion is whether remand is appropriate because plaintiff's claim is essentially federal, regardless of its characterization by plaintiff. The Court of Appeals for the Second Circuit recently stated this principle as follows:

the lower federal courts have "jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establish-

es either that federal law creates the cause of action *or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."*

*The Republic of the Phillipines v. Marcos,* 806 F.2d 344, 352 (2nd Cir.1986), *quoting Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983) (emphasis supplied). Defendants contend that plaintiff's right to relief necessarily depends on resolution of the question of whether the state can regulate Indian activities on the Tuscarora Reservation. That is a substantial federal question, defendants assert, since regulation of activity on Indian reservations is peculiarly a matter of federal law, and states only have such jurisdiction in Indian affairs as is expressly granted by the federal government. Item 1, ¶ 8. Thus, defendants assert that plaintiff's right to relief depends upon the extent of plaintiff's regulatory authority over Indians on the Tuscarora Reservation, which must be determined by reference to the United States Constitution, Article I, Section 8, Clause 3, relating to Indian Commerce, and Article II, Section 2, Clause 2, relating to treaty making, which the United States Supreme Court has recognized as the source of federal authority over Indian matters. *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); Item 8. Defendants offer the following quote from *McClanahan, supra,* in support of their position:

"[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." This policy was first articulated by this Court 141 years ago when Mr. Chief Justice Marshall held that Indian nations were "distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but

---

1. This action was filed on June 5, 1987, and voluntarily dismissed pursuant to Fed.R.Civ.P. 41 on June 10, 1987.

guarantied by the United States." It followed from this concept of Indian reservations as separate, although dependent nations, that state law could have no role to play within the reservation boundaries....

\* \* \* \* \* \*

As a leading text on Indian problems summarizes the relevant law: *"State laws generally are not applicable to tribal Indians on Indian Reservation except where Congress has expressly provided that state laws shall apply....*

411 U.S. 168–70, 93 S.Ct. 1260–61; Item 8 (*citations omitted; emphasis supplied*).

Defendants concede that 25 U.S.C. § 233, quoted earlier, does expressly provide for the application of New York State law in certain circumstances involving Indians. ("The courts of the State of New York under the laws of such State shall have jurisdiction in civil actions ... between Indians or between one or more Indians and any other person....") However, defendants note that the United States Supreme Court, in *California v. Cabazon Band of Mission Indians, supra,* recently held that Public Law § 280, a substantive equivalent of 25 U.S.C. § 1322 pertinent to the State of California, does not authorize the application of California state law regulating gambling to the Cabazon Indian Band on the Cabazon Reservation.

However, both the quotation from *McClanahan, supra,* and the *Cabazon* case are distinguishable from the instant action in one very significant respect. Those cases address a state's attempt to apply state law to an Indian tribe on an Indian reservation, in opposition to the tribe's own law. In contrast, this case involves the State's attempt to enforce, with the consent of the Tuscarora tribe, the law of the Tuscaroras.

Plaintiff therefore contends that this action does not seek State "regulation" of Indians on Indian land: it involves none of the questions at stake in *Cabazon,* because it does not involve a conflict between State and Tuscarora law. The relief sought is in no way incompatible with tribal interest. In sum, plaintiff asserts, the considerations at issue in *Cabazon* do not apply here, and the New York courts have jurisdiction over this action pursuant to 25 U.S.C. § 233.

The differences between the situation in this case and in *Cabazon* are great in terms of the impact of state law on Indian sovereignty, and in the end I am more persuaded by the factors supporting remand of this case to state court.

I am persuaded, first, by the general principle that remand is appropriate where jurisdiction is doubtful. *Lowe v. Trans World Airlines,* 396 F.Supp. 9, 12 (S.D.N.Y.1975). The rationale for this rule is that the parties are thus spared the possibility of relitigating the matter should an appellate court later rule that original jurisdiction was lacking. Thus,

a great many civil cases that involve a claim "arising under" continue to go up through the state courts. If a case does, the Supreme Court has appellate jurisdiction under § 1257 to review a final judgment rendered by the highest court of a State in which a decision could be had, where the judgment hinges upon a substantial federal question.

1A *Moore's Federal Practice,* § 0.160[3.-1], p. 227.

Secondly, the central challenges to the merits of plaintiff's action involve statutory determinations best committed as an initial matter to New York State courts. Defendants contend that plaintiff may not enforce Tuscarora law pursuant to New York Executive Law § 63(12) because that statute is applicable only to the enforcement of New York State law. That is an issue most properly determined as an initial matter by New York State courts. Defendants also contend that New York State courts do not have jurisdiction over actions to which New York State is a party under 25 U.S.C. § 233, because the latter only provides for jurisdiction over disputes between "Indians" or between Indians or other "persons." New York State is not a "person," defendants argue, and therefore 25 U.S.C. § 233 does not provide for the jurisdiction of New York State courts over this action. While 25 U.S.C. § 233 is federal, not state, law, it would clearly undermine the stat-

ute's intended grant of broad civil jurisdiction to New York courts if a party could simply make any issue of interpretation of the statute a basis for removal to federal court. Therefore, I believe that the issue of whether plaintiff is a "person" as contemplated by 25 U.S.C. § 233 is also one best determined as an initial matter by New York State courts.

Finally, there appears to be no federal or tribal interest threatened by plaintiff's action. The affidavit of Chief Leo Henry establishes that the government of the Tuscarora tribe does not in this instance have adequate resources to enforce Tuscarora law, and consents to assistance to this end from the State of New York. The State of New York is most practically situated to provide such assistance, and the provision of state resources *in* the federal and tribal interest has been endorsed in the past by the federal government in statutes like 25 U.S.C. § 233.

Therefore, for all the reasons cited above, this action is remanded to the Supreme Court of the State of New York, Niagara County.

So ordered.